UNITED STATES of America, Plaintiff,

v.

Roosevelt TAYLOR, Jr., Defendant.

No. CR–88–0140 EFL.

United States District Court,
N.D. California.

Aug. 24, 1988.

———

Lauri Kloster Gray, U.S. Atty's Office, San Francisco, Cal., for plaintiff.

Stuart Hanlon, San Francisco, Cal., for defendant.

### MEMORANDUM DECISION

LYNCH, District Judge.

### INTRODUCTION

Defendant Roosevelt Taylor, Jr. is being

prosecuted pursuant to 18 U.S.C. § 1623[1] for six counts of perjury for making false declarations during testimony before a grand jury. One of the requirements for conviction under section 1623[2] is that such declarations be "material" to the grand jury proceeding in which they are made. The United States has moved for a determination by the court that the false declarations alleged in the indictment are material as a matter of law. Defendant opposes the motion primarily on the grounds that the issue of the materiality of the declarations is a question for the trier of fact, in this case, the jury. Despite the great weight of authority supporting the government's position, the court concludes that the issue of materiality under section 1623 is one for the jury, and that the government's motion must therefore be denied.[3]

## DISCUSSION

At first blush, it would seem to be beyond question that the issue whether an allegedly false declaration is material to the proceeding in which it is made is a question of law to be determined by the court, and not a question for the trier of fact, typically a jury. *See, e.g., United States v. Bridges,* 717 F.2d 1444, 1448 & n. 18 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 708 (1984); *United States v. Goguen,* 723 F.2d 1012, 1016 & n. 4 (1st Cir.1983); *United States v. Weiss,* 752 F.2d 777, 786 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985); *United States v. Slawik,* 548 F.2d 75, 79 & n. 8 (3d Cir.1977); *United States v. Bailey,* 769 F.2d 203, 203 (4th Cir.1985); *United States v. Thompson,* 637 F.2d 267, 268 (5th Cir.1981); *United States v. Seltzer,* 794 F.2d 1114, 1123 (6th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987); *United States v. Picketts,* 655 F.2d 837, 840 (7th Cir.), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981); *United States*

---

1. The statute provides as follows:

   § 1623. False declarations before grand jury or court

   (a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States [1] knowingly makes any false *material* declaration or [2] makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false *material* declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

   (b) This section is applicable whether the conduct occurred within or without the United States.

   (c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

   (1) each declaration was *material to the point in question,* and

   (2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

   In any prosecution under this section, the falsity of a declaration set forth in the indict-

ment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations *material to the point in question* in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

   (d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

   (e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence. (emphasis added).

2. All statutory references are to Title 18 of the United States Code unless otherwise indicated.

3. The court actually denied the government's motion in a ruling at oral argument on June 10, 1988. Transcript of Hearing at 7. This opinion serves to set forth the court's reasons for doing so in greater detail.

v. Ashby, 748 F.2d 467, 470 (8th Cir.1984); United States v. Martinez, 837 F.2d 900, 902 (9th Cir.1988); United States v. Girdner, 773 F.2d 257, 259 (10th Cir.1985), cert. denied, 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 605 (1986); United States v. Carter, 721 F.2d 1514, 1535 n. 29 (11th Cir.), cert. denied sub nom. Morris v. United States, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984). In the words of the D.C. Circuit:

> The unanimous verdict of the federal courts has been that materiality is a question of law to be determined by the trial judge.

Bridges, 717 F.2d at 1448 (footnote omitted).

Nevertheless, like the child who insists that the emperor wears no clothes, defendant vigorously argues that materiality must be proven beyond a reasonable doubt to the jury just like any of the other elements of any serious crime. Defendant bases his argument on the line of authority exemplified by In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which explicitly holds that the due process clause requires that every element of an offense must be proven beyond a reasonable doubt to the trier of fact.[4] See, e.g., McMillan v. Pennsylvania, 477 U.S. 79, 83–91, 106 S.Ct. 2411, 2415–19, 91 L.Ed.2d 67 (1986); Cabana v. Bullock, 474 U.S. 376, 384–85, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986); Sandstrom v. Montana, 442 U.S. 510, 519–24, 99 S.Ct. 2450, 2456–59, 61 L.Ed.2d 39 (1979); Jackson v. Virginia, 443 U.S. 307, 313–16, 99 S.Ct. 2781, 2785–87, 61 L.Ed.2d 560 (1979); Patterson v. New York, 432 U.S. 197, 204–16, 97 S.Ct. 2319, 2324–30, 53 L.Ed.2d 281 (1977); Mullaney v. Wilbur, 421 U.S. 684, 696–704, 95 S.Ct. 1881, 1888–92, 44 L.Ed.2d 508 (1975); In re Winship, 397 U.S. at 361–64, 90 S.Ct. at 1071–72; Newton v. Superior Court, 803 F.2d 1051, 1058 (9th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987); United States v. Gipe,

672 F.2d 777, 779 (9th Cir.1982). In the words of the Winship Court:

> Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof [to the "proper factfinder"] beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

Winship, 397 U.S. at 364, 90 S.Ct. at 1073. More recently, the Court summarized this area of the law as follows:

> A defendant charged with a serious crime has the right to have a jury determine his guilt or innocence, and a jury's verdict cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof. Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime.

Cabana, 474 U.S. at 384–85, 106 S.Ct. at 696 (approvingly citing Connecticut v. Johnson, 460 U.S. 73, 95 & n. 3, 103 S.Ct. 969, 981 & n. 3, 74 L.Ed.2d 823 (1983) (Powell, J., dissenting); other citations omitted). Defendant asserts that the orthodoxy that materiality is for the court cannot stand scrutiny in the light of this line of authority, and that it makes plain that he is constitutionally entitled to have a jury decide the issue of materiality.

## I

### Sinclair and Materiality as a Matter of Law

In view of the obvious force of defendant's argument, it is appropriate to review the law standing for the proposition that materiality is a question of law. This result is founded on a decision of the Supreme Court well over half a century old, Sinclair v. United States, 279 U.S. 263, 49

---

**4.** Although Winship concerned the requirements of due process in a state proceeding, it is commonly considered the landmark case with respect to federal prosecutions as well. For simplicity the court shall refer to Winship as shorthand for defendant's argument that materiality is an element of perjury that must be determined by the jury.

S.Ct. 268, 73 L.Ed. 692 (1929). In that case, the Court affirmed the conviction of a witness for refusing to testify before a Senate committee investigating the Teapot Dome scandal. In determining that a Senator's unanswered query was "pertinent to the question under inquiry" as required for conviction of contempt of Congress under 2 U.S.C. § 192 [5] [hereinafter section 192], the Court took it for granted that, like the relevancy of evidence, materiality was a question of law inappropriate for determination by a jury. The Court therefore found that the analogous issue of "pertinency" was also a question of law.[6] The Supreme Court has subsequently followed *Sinclair* without question on a number of occasions and with respect to a number of statutes. *E.g., Kungys v. United States,* — U.S. —, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988) (denaturalization statute);[7] *Russell v. United States,* 369 U.S. 749, 755–59, 82 S.Ct. 1038, 1041–44, 8 L.Ed. 2d 240 (1962) (section 192); *Braden v.*

*United States,* 365 U.S. 431, 435–38 & n. 6, 81 S.Ct. 584, 587–89 & n. 6, 5 L.Ed.2d 653 (1961) (same).

As noted above, the lower federal courts have also followed *Sinclair.* Surprisingly however, no federal case appears to have analyzed and reconciled the *Sinclair* and *Winship* lines of authority, presumably because defendants have rarely raised the *Winship* argument.[8] Instead, cases generally continue simply to cite *Sinclair* and its progeny without analysis.

Cases in the Ninth Circuit have for the most part done likewise. *See, e.g., United States v. Gordon,* 844 F.2d 1397, 1403–04 (9th Cir.1988); *Martinez,* 837 F.2d at 902; *United States v. Prantil,* 764 F.2d 548, 557 (9th Cir.1985); *United States v. Dipp,* 581 F.2d 1323, 1328 (9th Cir.1978), *cert. denied,* 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979); *United States v. Anfield,* 539 F.2d 674, 678 (9th Cir.1976); *United States v.*

---

**5.** At the time of *Sinclair* section 192 read as follows:

"Every person who having been summoned as a witness by the authority of either House of Congress, to give testimony or to produce papers upon any matter under inquiry before either House, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question *pertinent to the question under inquiry,* shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100, and imprisoned in a common jail for not less than one month nor more than twelve months."

*Sinclair,* 279 U.S. at 284–85, 49 S.Ct. at 269 (emphasis added).

**6.** The *Sinclair* Court's entire discussion in reaching this conclusion is as follows:

The question of pertinency under § 1[9]2 was rightly decided by the court as one of law. It did not depend upon the probative value of evidence. That question may be likened to those concerning relevancy at the trial of issues in court, and it is not essentially different from the question as to materiality of false testimony charged as perjury in prosecutions for that crime. Upon reasons so well known that their repetition is unnecessary it is uniformly held that relevancy is a question of law. Greenleaf on Evidence (13th ed.) § 49. Wigmore on Evidence, §§ 2549, 2550. And the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court. *Carroll v. United States,* 16 F.(2d) [951, 954 (2d Cir.1927)]. *United States*

*v. Singleton,* 54 Fed. 488 [ (S.D.Ala.1892) ]. *Cothran v. State,* 39 Miss. 541, 547 [ (1860) ].

The reasons for holding relevancy and materiality to be questions of law in cases such as those above referred to apply with equal force to the determination of pertinency arising under § 1[9]2. The matter for determination in this case was whether the facts called for by the question were so related to the subjects covered by the Senate's resolutions that such facts reasonably could be said to be "pertinent to the question under inquiry." It would be incongruous and contrary to well-established principles to leave the determination of [the analogous pertinency] matter to a jury. *Interstate Commerce Commission v. Brimson,* [154 U.S. 447], 489 [14 S.Ct. 1125, 1138, 38 L.Ed. 1047] [ (1894) ]. *Horning v. District of Columbia,* 254 U.S. 135 [41 S.Ct. 53, 65 L.Ed. 185] [ (1920) ].

*Sinclair,* 279 U.S. at 298–99, 49 S.Ct. at 273–74.

**7.** The *Kungys* decision will be discussed in greater detail below. *See, e.g.,* text accompanying note 16; notes 26–33 and accompanying text *infra.*

**8.** The court notes that a defense based on the materiality requirement would frequently be very weak, because the issue of materiality is often easily determined, such as when the purpose and scope of a grand jury investigation is well documented and the alleged false declaration appears to be patently related. This may account for the paucity of cases analyzing this issue.

*Sisack,* 527 F.2d 917, 920 & n. 2 (9th Cir. 1976); *United States v. Percell,* 526 F.2d 189, 190 (9th Cir.1975).

Several cases, however, have not followed the orthodox view of *Sinclair.* For example, in *Luse v. United States,* 49 F.2d 241 (9th Cir.1931), the Ninth Circuit set forth as guidance for retrial its view that the element of materiality was typically a

9. It is appropriate to quote from *Luse* at length:

In view of the necessity of a new [perjury] trial on count 1, we will consider a question which will no doubt again arise on such trial. One of the main difficulties presented in the trial of the [perjury] case was that of *proving* that the false testimony alleged to have been given [in a previous mail fraud] trial was *material* to that [mail fraud] trial. It is stated that trial of the former case occupied over a month, that the transcript of the testimony contained about 4,000 pages. The trial of the former case charging fraud involved many transactions over a long period of years (1922–1930). The [defendant-]appellant's most serious complaint of the course taken by the court below relates to the prejudicial effect of the reading before the jury of the transcript of the evidence given in the former trial, which evidence, it is rightfully claimed, was extremely prejudicial to the appellant because it tended to show that he had been guilty of defrauding widows and others. This claim is predicated upon the proposition advanced by appellant on appeal and acted upon by the court below in its rulings upon the admissibility of the evidence and in its instructions to the jury, to the effect that the question of the materiality of the false evidence alleged to have been given by appellant in the former trial to the issues in that trial was a question of law to be determined upon the trial of this case by the judge; that this question was one not proper to submit to the jury, and that therefore, inasmuch as the testimony adduced upon this subject was for the benefit of the court and not the jury, it is *not* sufficient to instruct the jury that such evidence was for the consideration of the court alone, because it was a psychological impossibility for a jury to follow such an instruction, and prejudice was therefore inevitable because of the mass of testimony tending to show the fraudulent character of the operations of the defendant as disclosed by the portions of the transcript read in the presence of the jury.

It is unquestionably true that the materiality of the evidence adduced upon the former trial was a question to be determined by the trial judge. This was a question of *law,* but in a charge of perjury the question of materiality of the evidence adduced upon the former trial

jury question.[9] The court presumably did not view *Sinclair* as controlling on the issue of materiality, for it did not cite or allude to the case, which was then about two years old. Rather than follow *Sinclair*'s apparent view that materiality is a single concept that is invariably a question of law for the court, *Luse* found that materiality actually has several aspects and that they are often for the jury. The Ninth

is necessarily a *mixed* question of *law and fact.* That is, it is *not* an abstract question of *law,* but depends upon what occurred upon the former trial. Materiality depends primarily upon the issues involved in the former trial and upon the evidence adduced in support of these issues. What the evidence was, and what the pleadings were upon that trial is a question of *fact.* Whether the testimony alleged to be perjured was material to such issues is a question of *law.* In this case counsel stipulated that the transcript could be read with the same force and effect as though the various official court reporters who had phonographically reported the testimony and transcribed the same were personally present and testifying to the correctness of their phonographic notes and the transcription thereof. But the plea of not guilty interposed by the defendant traversed the *fact* that such testimony was given at all, and it was for the jury to say from all the evidence whether such testimony was given upon the former trial. The charge of the court to the jury as to the materiality of the testimony alleged to have been perjured must necessarily be predicated upon the assumption that the evidence and the pleadings read before the jury were those involved in the previous trial, although the jury might have concluded otherwise[.] For the court to determine the materiality of the false testimony it was necessary for it to assume these *facts* in a hypothetical instruction. In the case at bar there was *no* serious contention as to what occurred upon the previous trial, court and counsel both apparently assuming that the pleadings and transcript presented and read before the jury in this case were virtually conclusive on the parties, but this assumption, in the absence of a stipulation to that effect, did not establish what evidence had been actually introduced upon the fraud trial....

While the stipulation of counsel in this case as to the correctness of the reporter's notes greatly facilitated the trial of the case, it does not follow that this stipulation removed from the consideration of the jury the question of *fact* involved in a determination of the materiality of the evidence, namely, as to whether the evidence offered to show materiality was actually given in the former trial. This was a question for the *jury.*

Circuit apparently took it as beyond doubt that materiality in the sense of relevance for the purposes of admissibility in any trial is a question for the court. *Luse*, 49 F.2d at 245. However, *Luse* found that the question of materiality for purposes of proof of perjury is a mixed question of law and fact, because while the conclusion that a statement is material is a legal one, it is dependent on the purely factual determination of what occurred at the proceeding in which the statement was made. *Id.* Therefore, *Luse* reasoned, absent a stipula- tion by defendant to the facts concerning the proceeding in which he allegedly had committed perjury, the issue of materiality is for the jury. *Id.*

Although *Luse* appears to be in direct conflict with the standard understanding of *Sinclair*, the Ninth Circuit has never expressly overruled it, even when faced with a challenge to *Sinclair* based on *Luse*. In *Vitello v. United States*, 425 F.2d 416 (9th Cir.), *cert. denied*, 400 U.S. 822, 91 S.Ct. 43, 27 L.Ed.2d 50 (1970), in the course of rejecting the defendant's argument that the trial court had erred by "taking from the jury the question of the scope of the grand jury's investigation," the Ninth Circuit found that:

> The *scope* of the [grand jury] inquiry, under the provisions of the [general perjury] statute,[10] is *not* one of the essential elements of the crime. Even if we concede that the scope of the inquiry might be one of the *factors* going to make the *element of materiality*, [defendant] finds himself faced by a formid-

*Luse*, 49 F.2d at 244, 245 (emphasis added).

**10.** The statute at issue in *Vitello* was 18 U.S.C. § 1621, which currently provides in relevant part:

> § 1621. Perjury generally
> Whoever—
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any *material* matter which he does not believe to be true; or
> 2) in any declaration, certificate, verification, or statement under penalty of perjury

able line of [*Sinclair*] authority holding that materiality is an issue exclusively for the court.

*Vitello*, 425 F.2d at 423 (emphasis added) (footnote and citations omitted). The court then distinguished *Luse*, upon which defendant principally relied, on the basis that while the evidence in *Luse* was not agreed to, in *Vitello* the record "include[d] a transcript of the grand jury testimony *with a stipulation that the transcript was to be accepted as true by the trial jury.*" *Vitello*, 425 F.2d at 423 (emphasis in original) (footnote omitted).

Like *Luse*, *Vitello* thus viewed materiality as an element for the jury if the facts are not conceded, but for the court if they are conceded. The *Vitello* court apparently approved *Luse*'s departure from *Sinclair* in the former situation, although it saw no reason to depart in the latter case. *Vitello*, 425 F.2d at 423–24 & nn. 6–7. It is notable that in reaching this result the *Vitello* court did not cite and was apparently unaware of *Winship*, which had been decided just two weeks previously.

At least two more modern Ninth Circuit cases have gone further, concluding that materiality is always a matter for the jury. In *United States v. Valdez*, 594 F.2d 725 (9th Cir.1979), the court accepted the gist of defendant at bar's due process argument with respect to a statute prohibiting making false statements to government agencies, 18 U.S.C. § 1001.[11] Thus, the court held that:

> ... willfully subscribes as true any *material* matter which he does not believe to be true; is guilty of perjury....
> (emphasis added).

**11.** This statute provides as follows:
> § 1001. Statements or entries generally
> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a *material* fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
> (emphasis added).

Since it is an essential element, materiality, as with all of the other elements of the offense charged, must be determined by the jury.

*Valdez,* 594 F.2d at 729. Indeed, the *Valdez* court apparently found this result so incontestable that it believed it to be unnecessary to cite any authority in support of the proposition, and *Valdez* thus did not discuss *Winship* or its kindred cases. Nor did the Ninth Circuit make any reference to *Sinclair,* even though *Valdez* departed from the result seemingly required if *Sinclair* remains good law. Similarly in *United States v. Halbert,* 640 F.2d 1000 (9th Cir.1981), the Ninth Circuit found that the materiality impliedly [12] required for conviction of mail fraud pursuant to 18 U.S.C. § 1341 was a question for the jury.[13]

Although it did not cite *Luse, Vitello,* or *Halbert,* the Ninth Circuit recognized the tension between *Valdez* and the orthodox *Sinclair* cases in the recent decision of *United States v. Larm,* 824 F.2d 780 (9th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988). Stating that the circuit has limited *Valdez* to section 1001 agency perjury offenses and continued to follow *Sinclair* with regards to other crimes such as the judicial and tax return [14] perjury offenses, then–Judge Kennedy forthrightly explained that in the previous case of *United States v. Flake,*

---

**12.** The *Halbert* court's finding that materiality is impliedly required is discussed further below. *See* note 32 and accompanying text *infra.*

**13.** The courts' lack of precision regarding materiality is perhaps typified by the Ninth Circuit's decision in *Halbert.* Having found that materiality is a "requirement" for conviction under section 1341, *Halbert,* 640 F.2d at 1008, the court's principal concern was that:

> The failure to instruct the jury on the requirement of materiality of the misrepresentations ... raises the possibility that the verdict might have been based on incorrect legal grounds which may require reversal.

*Id.* at 1007 (citations omitted). The court went on to state that:

> [I]n this case, we think the materiality of the misrepresentations was clearly established by the evidence.
> When that is so, failure to instruct the jury on materiality is not error.

*Id.* at 1008 (citing *Valdez,* 594 F.2d at 729; *United States v. Kostoff,* 585 F.2d 378, 380 (9th Cir.1978)). Given its citation of *Valdez, Halbert* seems to have intended simply to follow *Valdez'* conclusion that materiality is an element that must always be determined by the jury as well as *Valdez'* determination that in the particular case the error was harmless. The *Halbert* panel thus presumably meant that the failure to instruct was "not error" *requiring reversal,* not that it was not error at all.

The Ninth Circuit's additional citation of its decision in *Kostoff* is more problematic. On the one hand, *Kostoff* seems to be in accord with *Valdez* where the *Kostoff* court reversed the section 1341 count because:

> The total lack of jury instructions on mail fraud is plain error.... The court never read the text of 18 U.S.C. § 1341 nor did it summarize the essential elements, so that the defendants could have been convicted of conspiracy

to commit a crime that was never defined for the jury.

*Kostoff,* 585 F.2d at 379–80. On the other hand, the citation might be read as casting doubt on the above interpretation of *Halbert,* because *Kostoff* also seems to stand for precisely the opposite of the proposition for which *Halbert* apparently cited it:

> The [*Kostoff*] trial judge determined, as a matter of law, that the TRW credit profile was material to the extension of credit, and if false, that the document would be materially false. We conclude that under the circumstances the materiality of the representations was clearly established from the evidence. *United States v. East,* 416 F.2d 351 (9th Cir. 1969). Therefore, failure to instruct the jury as to materiality was *not* error.

*Kostoff,* 585 F.2d at 380 (emphasis added). In light of the *Kostoff* panel's citation of *East,* however, the best interpretation is probably that, as in *Halbert,* the court's statement in *Kostoff* that failure to instruct was not error was intended to refer to error requiring reversal, not error at all. *See East,* 416 F.2d at 355 (no prejudice requiring reversal resulted from trial court's error in failing properly to instruct jury because element of materiality was sufficiently established as a matter of law).

For further discussion regarding harmless error, *see* note 39 *infra.*

**14.** The offense referred to in *Larm,* 824 F.2d at 783–84, is 26 U.S.C. § 7206(1):

§ 7206. Fraud and false statements

Any person who—

(1) Declaration under penalties of perjury. —Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every *material* matter ...

shall be guilty....

(emphasis added.)

746 F.2d 535 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985), "[w]e discussed *Valdez,* and ultimately distinguished it solely on the grounds that we were 'concerned with a different statute.'" *Larm,* 824 F.2d at 784 (quoting *Flake,* 746 F.2d at 537). Nevertheless, the *Larm* court did not offer a sounder analysis or even explain why the statute at issue in *Larm* prohibiting false statements in an application for federal medical benefits[15] should be interpreted like the judicial and tax perjury statutes rather than like the *Valdez* agency perjury statute; instead, the court simply chose the road more traveled by:

> We find no principled way to distinguish this [*Larm*] case from the perjury cases.... Absent some good reason to do so, we are disinclined to create a direct conflict with another circuit. We think, therefore, that the weight of the authority requires us to conclude that the district court properly treated the question as one of law.

*Larm,* 824 F.2d at 784.

Unlike the Ninth Circuit in *Larm,* in this case the court *has* been squarely presented with a good reason to reconsider whether materiality is truly a question of law. The good reason is the Supreme Court's holding in cases such as *Winship,* which the *Larm* court never alluded to. This court must therefore determine whether modern due process jurisprudence requires that the court find that materiality in this case is a matter for the jury rather than a matter of law for the court.

## II

### *Winship* and Materiality as an Element of Perjury

■ Under *Winship,* the relevant inquiry for present purposes is whether materiality is an element of perjury. In the case at bar, the government has not argued that materiality is not an element of perju-

ry; on the contrary, the government insists that "[m]ateriality is a necessary element of the crime of perjury." United States' Opening Memorandum of April 29, 1988, at 2 (citation omitted); *see also id.* at 3; Transcript of Hearing of May 13, 1988, at 2–3. Nevertheless, it is appropriate to review the law on this issue.

First, the courts have generally viewed materiality as an element. In *Sinclair* itself, in the same way that it viewed pertinency to be an element of section 192, *see, e.g.,* 279 U.S. at 296–97, 49 S.Ct. at 272–73, the Supreme Court clearly believed materiality to be an element of perjury:

> And the materiality of what is sworn, when an element in the crime of perjury, is one for the court.

*Sinclair,* 279 U.S. at 298, 49 S.Ct. at 273 (citations omitted); *cf. Deutch v. United States,* 367 U.S. 456, 471, 81 S.Ct. 1587, 1595, 6 L.Ed.2d 963 (1961) ("One element of th[e section 192] offense was the pertinence to the subject matter under inquiry of the questions the petitioner refused to answer." (footnote omitted)); *id.* at 472, 81 S.Ct. at 1596 (Harlan, J., dissenting) ("There is, of course, no doubt that a showing of 'pertinency' is an essential part of the Government's burden in a prosecution under 2 U.S.C. § 192."); *Quinn v. United States,* 349 U.S. 155, 165 & n. 33, 75 S.Ct. 668, 674 & n. 33, 99 L.Ed. 964 (1955); *In re Chapman,* 166 U.S. 661, 667–72, 17 S.Ct. 677, 679–81, 41 L.Ed. 1154 (1897). Given the Supreme Court's recent approving quotation of this statement from *Sinclair,* it would appear that the Court continues to have this view. *See Kungys,* 108 S.Ct. at 1547 (quoting *Sinclair,* 279 U.S. at 298, 49 S.Ct. at 273).

The Ninth Circuit has often stated even more definitely that materiality is an element. *See, e.g., Martinez,* 837 F.2d at 902 ("[Materiality] is an element of a § 1623 [judicial perjury] offense...."); *Valdez,* 594 F.2d at 728 ("Materiality is an essential

---

15. This statute provides in pertinent part that:

Whoever—

(1) Knowingly and willfully makes or causes to be made any false statement or representation of a *material* fact in any appli-

cation for any benefit or payment under a State plan approved under this [Medicaid] subchapter ...

shall ... be guilty....

42 U.S.C. § 1396h(a)(1) (emphasis added).

element of the [agency perjury] offense prohibited by 18 U.S.C. § 1001." (citations omitted)); *id.* at 729 (materiality is an "essential element"); *United States v. Talkington,* 589 F.2d 415, 416 (9th Cir.1979) ("Materiality is an essential element of the [agency perjury] offenses defined in 18 U.S.C. § 1001." (citations omitted)); *Dipp,* 581 F.2d at 1327–28 (materiality is one of "substantive elements necessary to establish [section 1623 judicial] perjury"); *Vitello,* 425 F.2d at 423 (materiality is an "element" of section 1621 general perjury).

Second, as the Supreme Court has said with respect to ascertaining the elements of state offenses and is equally true in determining the elements of federal criminal statutes:

> [We have] stressed that in determining what facts must be proved beyond a reasonable doubt the ... legislature's definition of the elements of the offense is usually dispositive: "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which the defendant is charged."

*McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986) (quoting *Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed. 2d 281 (1977)) (emphasis in original); *see also United States v. United States Gypsum Co.,* 438 U.S. 422, 435–43, 98 S.Ct. 2864, 2872–77, 57 L.Ed.2d 854 (1978). Here, a reading of the judicial perjury statute at issue in this case leaves little doubt that materiality is an element of the offense; indeed, the term "material" occurs four times in section 1623 and is an express requirement in each of the two clauses

defining the prohibited behavior. *See* note 1 *supra.*

Further, the legislative history of section 1623 does not indicate that Congress intended that materiality would not be an element of judicial perjury. *See, e.g.,* H.Rep. No. 91–1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4008, 4023–24 [hereinafter Judiciary Committee Report]. On the contrary, the official Judiciary Committee Report expressly states that "[k]nowledge, falsity, and materiality are distinct elements of the offense which must be proved." [16] *Id.* at 4023. Moreover, at common law materiality has for centuries been considered an essential attribute of the offense of perjury. *E.g., Kungys,* 108 S.Ct. at 1545–46 (quoting 3 E. Coke, Institutes 164 (6th ed. 1680); 4 W. Blackstone, Commentaries *137); *cf. Commonwealth v. McDuffee,* 379 Mass. 353, 398 N.E.2d 463, 467 (1979).

Third, although as discussed below materiality is sometimes characterized as a legal issue because it is said to turn more on interpretation of law than on factual showings,[17] in this as in many cases materiality is rooted in a classic factual question that the government seeks to prove through typical means. The Supreme Court itself has repeatedly recognized the factual nature of the showing required for a determination of the pertinency at issue in *Sinclair.* For example, in *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed. 2d 240 (1962), in the course of reversing section 192 convictions because the indictments did not "state the question under congressional committee inquiry as found by the grand jury," *id.* at 771, 82 S.Ct. at

---

**16.** Although courts have sometimes stated that materiality need not be proven beyond a reasonable doubt, *see, e.g., Martinez,* 837 F.2d at 902 ("Since materiality is a legal question, the government need not prove it beyond a reasonable doubt."), in light of this court's conclusion that materiality is an element of perjury subject to the standard requirements of *Winship,* there appears to be no basis for finding that a different standard of proof should apply, *see, e.g.,* 18 U.S.C. § 1623(e) (specifically providing for proof beyond a reasonable doubt); Judiciary Committee Report at 4024 (same).

**17.** The courts' seemingly paradoxical treatment of this aspect of materiality is perhaps best conveyed by the following quotation from *United States v. Koonce,* 485 F.2d 374, 380 (8th Cir.1973) (citations omitted):

> [T]he question of materiality is one of law for the courts to decide. The proper determination of the question, however, is essentially a factual matter for the trial judge to determine....

1051 (footnote omitted),[18] the Court spoke at length about the factual nature of the determination of the scope of the inquiry and the resulting necessity that the determination be made by a grand jury, not a judge or prosecutor:

> As has been pointed out, the very core of criminality under [section 192] is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject *actually* was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of *fact*, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.
>
> .     .     .     .     .
>
> ... When Congress provided that no one could be prosecuted under [section] 192 except upon an indictment, Congress made the basic decision that only a grand jury could determine whether a person should be held to answer in a criminal trial for refusing to give testimony pertinent to a question under congressional committee inquiry. A grand jury, in order to make that ultimate determination, must necessarily determine what the question under inquiry was. To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of *facts* not found by, and perhaps not even presented to, the grand jury which indicted him.

*Russell*, 369 U.S. at 764, 770, 82 S.Ct. at 1047, 1050 (citations omitted) (emphasis added).

Likewise in *Deutch v. United States*, 367 U.S. 456, 81 S.Ct. 1587, 6 L.Ed.2d 963 (1961), the Court found that:

> The ... pertinency issue stems from the prosecution's duty at the trial to prove that the questions propounded by the congressional committee were *in fact* "pertinent to the question under inquiry" by the committee.

*Id.* at 468, 81 S.Ct. at 1593–94 (emphasis added). Although in *Deutch* the government presented a witness as well as documentary evidence to prove the element of pertinency, *e.g., id.* at 467, 469–70, 81 S.Ct. at 1593, 1594–95, the Court reversed the conviction under section 192 because the evidence as a matter of law was not sufficient, *id.* at 471, 81 S.Ct. at 1595.

Similarly, the Ninth Circuit has long treated materiality as an element of perjury to be proved at trial with facts. *See, e.g., Martinez,* 837 F.2d at 902–03 (government failed to meet its burden of proving element of materiality at trial because testimony of government witness indicated no materiality and "[t]he government did not present evidence sufficient to take the case to the jury on this count"); *Dipp,* 581 F.2d at 1327–28 & n. 2 (element of materiality properly found where evidence included entire transcript of trial in which perjury was committed); *Vitello,* 425 F.2d at 423–24 & nn. 6–7 (element of materiality properly found where evidence included transcript of grand jury proceeding in which perjury was committed and defendant stipulated to "agreed state of facts on what occurred before the grand jury, including the statement to the [defendant] on the scope of that body's investigation"); *Luse,* 49 F.2d at 244–46 (in absence of stipulation, pleadings and transcript of trial in which perjury was allegedly committed were not conclusive of "question of fact ... as to whether the evidence offered to show materiality was actually given in the former trial").

In recognition of its burden of proof on this issue in the prosecution at bar, the government offers to prove the scope of the grand jury's investigation through the testimony of the Assistant United States Attorney responsible for the grand jury

---

**18.** Notwithstanding the Court's footnote to this passage stating that the analogy between materiality and pertinency is not always persuasive, this court believes that it is compelling here. *See Russell,* 369 U.S. at 771 n. 18, 82 S.Ct. at 1051 n. 18.

investigation.[19] United States' Supplemental Memorandum of May 31, 1988, at 10–11 (incorporating by reference the Declaration in Opposition to Motion to Dismiss Because of Prosecutorial Misconduct of May 10, 1988); United States' Reply Memorandum of May 11, 1988, at 5–8 (same). Defendant asserts that depending on the results of discovery he may dispute the government's factual showing at trial, and that in any event he is entitled to insist that the government satisfy its burden of proof to the jury. *E.g.*, Defendant's Opposition of May 13, 1988, at 10.

In sum, there seems little doubt that, at least in this case, materiality is an element of the offense that requires factual as well as legal determinations.[20] Having reached this conclusion, the court must next determine whether there is nevertheless some reason that the normal due process requirements enunciated in cases such as *Winship* do not entitle defendant to have the jury determine materiality.

**19.** Unlike the circumstances in cases such as *Sinclair*, where the Supreme Court found it possible to rely solely on congressional resolutions to determine the question under congressional inquiry, here such presumably reliable evidence is not available to show the actual scope of the grand jury investigation. *See, e.g., Russell*, 369 U.S. at 759, 82 S.Ct. at 1044. While it might be argued that this case is therefore distinguishable from ones where the scope of the proceeding was determined from official documents of which the court could take judicial notice, such a distinction seems without a meaningful difference given the court's conclusions below regarding the demands of due process.

**20.** In light of this finding, the court need not reach any issue regarding the possible application of *Winship* principles even if materiality were not an element. *See generally, e.g.,* Jeffries & Stephan, *Defenses, Presumptions, and Burden of Proof in the Criminal Law,* 88 Yale L.J. 1325, 1379 (1979) ("Under [a] substantive reinterpretation of *In re Winship,* the constitutional command of proof beyond a reasonable doubt would not be limited to factors formally identified as elements of the offense.").

**21.** Although in *Winship* the Supreme Court stated that the due process protections it confirmed had long been the rule in federal prosecutions and cited numerous pre-*Sinclair* cases for that proposition, *Winship*, 397 U.S. at 362, 90 S.Ct. at 1071, the *Sinclair* Court did not address pertinency or materiality in terms of due process, *Sinclair*, 279 U.S. at 298–99, 49 S.Ct. at 273,

## III

### *Sinclair* as an Exception to *Winship*

█] The only substantial reason offered by the government for why *Winship* should not apply to materiality is the great weight of *Sinclair* precedent. If that precedent stood alone, the court would unquestionably be bound by it. However, because the Supreme Court has also evolved the more recent *Winship* line of cases, this court must do its best to determine whether the Supreme Court would consider that the reasoning of those precedents can be harmonized, or that one of them must be viewed as controlling.

In light of the unquestionable vitality of *Winship*, the health of *Sinclair* can hardly be viewed as robust. First, in reaching its decision in *Sinclair*, the Court of course did not consider *Winship* or the vast body of due process jurisprudence that has evolved since 1929.[21] As discussed above,

despite the fact that the appellant in *Sinclair* made arguments dramatically similar to those of defendant in this case:

> The burden of proof is on the prosecution, and the query is: Can this Court say beyond a reasonable doubt that the committee was engaged upon an inquiry in aid of legislation? It will not do to indulge a presumption to that effect. No presumption known to the law is as strong as the presumption of innocence. No presumption can be indulged in the place of proof to establish an essential ingredient of a crime.
>
> The court erred in overruling the motion of the defendant[-appellant] to direct the jury to return a verdict of not guilty, because there was no proof that the questions propounded were questions of the committee, or were pertinent to any inquiry which the committee was authorized to conduct.

> ·      ·      ·      ·      ·

> The position confronting the trial court at the close of the evidence was entirely different from that subsisting on demurrer. By the failure to make any proof of the innuendoes, the averment of pertinency then remained unsupported by anything but the naked questions; just as though the innuendoes had been stricken from the indictment.

> ·      ·      ·      ·      ·

> If we assume that a fact is pertinent only when it is so connected, directly or indirectly, with a fact in issue, that evidence given respecting it may reasonably be expected to assist in proving or disproving the fact in

the Court was actually concerned with the pertinency requirement of the offense of refusal to testify before Congress punishable pursuant to 2 U.S.C. § 192. Given that the Court touched upon the materiality requirement of perjury only by way of analogy, *Sinclair*'s treatment of materiality might fairly be characterized as dicta. The reasoning and authority relied upon for this discussion are nowadays also of less than compelling force:

> The question of pertinency under § 1[9]2 ... may be likened to those concerning relevancy at the trial of issues in court, and it is not essentially different from the question as to materiality of false testimony charged as perjury in prosecutions for that crime. Upon reasons so well known that their repetition is unnecessary it is uniformly held that relevancy is a question of law. Greenleaf on Evidence (13th ed.) § 49. Wigmore on Evidence, §§ 2549, 2550. And the materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court. *Carroll v. United States*, 16 F.(2d) [951, 954 (2d Cir.1927)]. *United States v. Singleton*, 54 Fed. 488 [(S.D.Ala.1892)]. *Cothran v. State*, 39 Miss. 541, 547 [(1860)].
>
> ... It would be incongruous and contrary to well-established principles to leave the determination of [the analogous pertinency] matter to a jury. *Interstate Commerce Commission v. Brimson*, [154 U.S. 447], 489 [14 S.Ct. 1125, 1138, 38 L.Ed. 1047] [(1894)]. *Horning v. District of Columbia*, 254 U.S. 135 [41 S.Ct. 53, 65 L.Ed. 185] [(1920)].

issue, then the question of pertinency is a question of fact, to be determined by logical reasoning and not by legal rules. But, when the question of its pertinency is the essential ingredient of the crime charged, we maintain that the question is one which must be submitted to a jury along with all of the other facts in the case, to the end that the accused may be afforded a trial by jury under the Sixth Amendment of the essential ingredients of the crime charged.

Every essential ingredient of the crime must be proven to the satisfaction of the jury beyond a reasonable doubt.

Conceding, for the moment, that a situation may exist where an essential ingredient of an

*Sinclair*, 279 U.S. at 298–99, 49 S.Ct. at 273; *see also* note 6 *supra*.

While Greenleaf and Wigmore may remain correct as to the law of evidence, as the Fifth Circuit recognized in *United States v. Johnson*:

> Despite the Supreme Court's statement [to the contrary], the comparability of a ruling on the admissibility of evidence, which is the sole question when relevancy is examined, and determining an issue upon which guilt or innocence depends is not immediately obvious....

718 F.2d 1317, 1324 (5th Cir.1983). A ruling by the court regarding evidence simply determines what information a jury may consider in reaching its decision regarding the elements of an offense; a ruling by the court regarding materiality precludes the jury from ever reaching a decision regarding that element. As the Supreme Judicial Court of Massachusetts found in *Commonwealth v. McDuffee*, 379 Mass. 353, 398 N.E.2d 463, 468 (1979), it is therefore questionable whether a useful analogy can any longer be drawn between the determination of the relevance of evidence for purposes of admissibility and the determination of the element of materiality for purposes of perjury conviction. Rather, as the *McDuffee* court believed, the reasoning of the New York courts seems more sound:

> "[M]ateriality as a substantive element of the crime of perjury is something more than materiality considered in an evidentiary ruling by the court. Materiality in such a case becomes a matter for ultimate determination by the [jury]."

offense involves a question of law for determination by the Court, there being no conflict of evidence or other ambiguity attendant upon the facts which are the basis upon which such legal conclusion is predicated, still the court can not legally withdraw from the jury the determination of the ultimate fact upon which rests the question of the guilt or innocence of the accused. In such case the court should instruct the jury that if they believe the facts, the predicate of their conclusion, the legal effect of them is to establish the essential ingredient to which they relate.

*Sinclair*, 279 U.S. at 275, 276–77, 49 S.Ct. 268 (argument of appellant) (citations omitted).

*McDuffee*, 398 N.E.2d at 468 (quoting *People v. Clemente*, 285 App.Div. 258, 262, 136 N.Y.S.2d 202 (1954), *aff'd*, 309 N.Y. 890, 131 N.E.2d 294 (1955)).

Nor is the authority relied on in *Sinclair* persuasive in light of subsequent due process jurisprudence. *McDuffee*, 398 N.E.2d at 468–69. *Sinclair* cited three cases for the proposition that materiality is a question for the court. First, *Carroll v. United States*, 16 F.2d 951, 954 (2d Cir.), *cert. denied*, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927), the oft discussed case about the materiality of grand jury questions regarding the scandalous but "spectacular immersion of Miss Hawley" in a bathtub of champagne during Prohibition, relied without analysis on the second case cited by the *Sinclair* Court, *United States v. Singleton*, 54 F. 488 (S.D.Ala.1892).

In its very brief *Singleton* opinion, the district court simply stated that materiality was a question for the court, citing no authority whatever. 54 F. at 489. It is important to note that the *Singleton* court so stated while sustaining a demurrer because of the inadequacy of a criminal indictment, which beyond doubt is a determination for the court and not a jury.[22] While *Singleton* clearly and correctly found the question of whether materiality had been sufficiently *alleged* was for the court, there is no indication as to whether the *Singleton* court would have reached

the same conclusion with respect to the question whether materiality had been *proved* had the case proceeded to trial.

The third case, *Cothran v. State*, 39 Miss. 541, 547 (1860), on the other hand, does stand for the proposition for which *Sinclair* cited it. However, the *Cothran* decision, which concerned the alleged perjury of defendant-appellant in his civil suit as a plaintiff to recover possession of "a certain negro boy [slave] named Wiley," *id.* at 542, provided no authority or reasoning for its determination that materiality is a question for the court.[23] *See id.* at 547.

*Sinclair* also cited two cases in support of the general view that "[i]t would be incongruous and contrary to well-established principles" for a jury to decide issues such as materiality. *Sinclair*, 279 U.S. at 299, 49 S.Ct. at 274. The first, *Interstate Commerce Commission v. Brimson*, 154 U.S. 447, 489, 14 S.Ct. 1125, 1138, 38 L.Ed. 1047 (1894), cited for the proposition that there is never a right to trial by jury in criminal prosecutions for contempt, is clearly no longer valid on this ground. *See, e.g., Bloom v. Illinois*, 391 U.S. 194, 197, 88 S.Ct. 1477, 1479, 20 L.Ed.2d 522 (1968) (citing *Brimson*, 154 U.S. at 488–89, 14 S.Ct. at 1137–38, as example of law holding that no right to jury in the course of overruling that proposition).

The second case, *Horning v. District of Columbia*, 254 U.S. 135, 41 S.Ct. 53, 65

---

**22.** The context of the *Singleton* court's remark is as follows:

> To found an indictment for perjury one of the requisite circumstances is that the matter sworn to must be material to the question depending; and the materiality of the matter sworn to must be expressly averred, or it must be clearly disclosed by the *facts* as stated on the face of the indictment. It must clearly appear that it was material, or it must be alleged to be so; and the question of materiality is for the court. The specific statements by the defendant ... may or may not have been material. It does not appear by *facts*, as stated on the face of the indictment, that such matter was material, and there is no express averment that it was so.... The point raised by the demurrer to the indictment is ... whether the indictment shows that the matter alleged to have been sworn to by the defendant, and on which the perjury is assigned, was material in the proceeding in which the al-

leged false oath was taken. My opinion is that the point is well made, and that the demurrer is good, and should be sustained. It is so ordered.

*Singleton*, 54 F. at 489, 490 (emphasis added).

**23.** *Cothran*'s entire discussion of this issue is as follows:

> The instruction is further erroneous in submitting to the jury as a question of fact the materiality of the defendant's statement on oath as witness in the trial of the [civil] case against [slave lessor] Andrews. When the record of that suit was produced, and the issue joined between the parties thereto brought before the court and jury on the trial of the defendant, and his statement on oath as a witness in said cause proven, its *materiality* to support that issue was a question of law for the court, and not a question of fact for the jury.

*Cothran*, 39 Miss. at 547 (emphasis in original).

L.Ed. 185 (1920), which *Sinclair* apparently cited for the proposition that it was not error for the trial court to fail to instruct the jury with respect to the intent element in an illegal pawnbroking prosecution,[24] also appears to be infirm in relevant part.[25] *See, e.g., Sandstrom v. Montana,* 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1979) (failure properly to instruct jury on element of intent is due process violation under *Winship* ); *United States v. United States Gypsum Co.,* 438 U.S. 422, 446, 98 S.Ct. 2864, 2878, 57 L.Ed.2d 854 (1978) ("[U]ltimately the decision on the issue of intent must be left to the trier of fact alone. The instruction given invaded this factfinding function." (footnote omitted)).

Accordingly, if the Supreme Court were to reaffirm *Sinclair* in the face of a *Winship* challenge, it is highly doubtful that it would rely on the analysis or authority contained in the *Sinclair* opinion. *Sinclair* thus does not provide reasoning that guides this court in this case. Like the Fifth Circuit in *Johnson,* the court is there-fore "reluctant to expand *Sinclair* 's sweep at the expense of the accused's right to interpose the jury between himself and the judge." *Johnson,* 718 F.2d at 1324.

Nor have subsequent Supreme Court cases significantly expanded on *Sinclair* 's reasoning. *E.g., Russell,* 369 U.S. at 755–70, 82 S.Ct. at 1042–51; *Braden v. United States,* 365 U.S. 431, 435–37, 81 S.Ct. 584, 587–88, 5 L.Ed.2d 653 (1961). Most recently, in *Kungys v. United States,* —— U.S. ——, 108 S.Ct. 1537, 1547, 99 L.Ed.2d 839 (1988),[26] the Court again relied on *Sinclair* without further analysis. During the course of determining the proper standard of materiality for purposes of denaturalization proceedings under 8 U.S.C. § 1451(a), the *Kungys* Court stated that:

> Here again we see no reason not to follow what has been done with the materiality requirement under other statutes dealing with misrepresentations to public officers.

*Kungys,* 108 S.Ct. at 1547. Although in *Kungys* the Court had ordered further

---

**24.** Thus, with respect to the question whether the intent of the defendant to engage in the business of pawnbroking in the District of Columbia was demonstrated by the abundant evidence that defendant's business had considerable contacts with Washington although its headquarters was in Virginia, the *Horning* Court stated:

> It is said with reference to the charge of the judge to which we shall advert that there was a question for the jury as to the defendant's intent. But we perceive none. There is no question. that the defendant intentionally maintained his storehouse and managed his business in the way described.

*Horning,* 254 U.S. at 136–37, 41 S.Ct. at 53.

**25.** Another court, *McDuffee,* 398 N.E.2d at 468–69, has viewed *Sinclair* 's citation of *Horning* as being for the related proposition that the judge did not err in instructing the jury:

> that there really was no issue of fact for them to decide; that they were not warranted in capriciously saying that the witnesses for the Government and the defendant were not telling the truth; that the course of dealing constituted a breach of the law; ... that he could not tell them in so many words to find the defendant guilty but that what he said amounted to that; [and] that the facts proved were in accord with the information and that the Court of Appeals had said that that showed a violation of law.

*Horning,* 254 U.S. at 138, 41 S.Ct. at 54. *McDuffee* found this aspect of *Horning* doubtful in light of subsequent case law, *McDuffee,* 398 N.E. 2d at 468–69, and this court agrees. *See, e.g., United States v. Martin Linen Supply Co.,* 430 U.S. 564, 573, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977) ("The trial judge is ... barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused."); *United States v. Argentine,* 814 F.2d 783, 788 (1st Cir. 1987) ("Although the evidence may not have been directly contradicted by conflicting evidence, it is nonetheless settled, in a criminal case, that '[t]he plea of not guilty places every issue in doubt, and not even undisputed fact may be removed from the jury's consideration, either by direction or by omission in the charge.' " (quoting *United States v. Natale,* 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); other citation omitted). Even if this aspect of *Horning* were still valid, it would provide only slight analogous support for *Sinclair* 's conclusion that materiality is not for the jury.

**26.** Although counsel understandably did not become aware of the very recent *Kungys* case until after the oral ruling on June 10, 1988, the court had discovered and fully considered the case during the course of its own deliberations prior to that date.

briefing including the issue whether materiality is a question of law or fact,[27] given that the parties did not contest that in civil denaturalization proceedings there is no right to a jury, *see, e.g., Luria v. United States*, 231 U.S. 9, 27–28, 34 S.Ct. 10, 15, 58 L.Ed. 101 (1913); *United States v. Walus*, 616 F.2d 283, 304 n. 53 (7th Cir.1980), no party had occasion to argue that because materiality is a question of fact it therefore is an element for the jury. Nor did any party raise *Winship* authority in this regard. *See, e.g.,* Petitioner Kungys' Supplemental Brief at 23–26, 29–31 & n. 4, 34–36; Respondent United States' Supplemental Brief at 21 & n. 12, 29–30 & n. 18 [available on LEXIS, Genfed library, Briefs file]. The *Kungys* Court did not have before it the question presented by the motion at bar, and it is not surprising that the Court "s[aw] no reason" to question *Sinclair*. *Kungys* thus would not appear to be controlling or for that matter particularly informative.

Disturbingly, however, the *Kungys* Court nevertheless went on to quote a Sixth Circuit case regarding materiality with respect to the section 1001 agency perjury offense:

"[a]lthough the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on an interpretation of substantive law. Since it is the court's responsibility to interpret the substantive

law, we believe [it is proper to treat] the issue of materiality as a legal question." *United States v. Abadi*, 706 F.2d 178, 180, cert. denied, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983).

*Kungys*, 108 S.Ct. at 1547 (brackets in original). In doing so, *Kungys* inexplicably failed to indicate its omission[28] of the *Abadi* court's crucial footnote to this quotation:

2. [The Sixth Circuit] do[es] not believe that the materiality requirement should be treated as an "element" of 18 U.S.C. § 1001 in the sense that the prosecution must prove materiality beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *Cf. United States v. Giacalone*, 587 F.2d [5,] 7 [6th Cir.1978]. Instead, [the Sixth Circuit] view[s] the materiality requirement as a judicially-imposed limitation to insure the reasonable application of the statute. Thus, the district court is required to find, as a matter of law, that the false statement or representation is material in a prosecution under section 1001.

*Abadi*, 706 F.2d at 180 n. 2 [hereinafter *Abadi* footnote 2]. Fortunately, this court need not speculate as to whether the *Kungys* majority was aware of or agreed with the reasoning that the Sixth Circuit used in *Abadi* footnote 2 to dispose of *Winship*, because the *Kungys* Court did not have before it and therefore of course did not

---

27. The Court directed the parties to address the following questions:

"(1) Whether petitioner is subject to denaturalization for want of good moral character under 8 U.S.C. §§ 1451(a), 1427(a), and 1101(f)(6), with particular attention to:

"(a) whether the "false testimony" provision of 8 U.S.C. § 1101(f)(6) should be interpreted to include a requirement that the false testimony concern a *material fact;*

"(b) what standards should govern the determination under 8 U.S.C. § 1101(f)(6) whether "false testimony" has been given "for the purpose of obtaining any benefits under this chapter....""; and

"(c) whether the latter determination is one of *law or fact.*

"(2)(a) Should the materiality standard articulated in *Chaunt v. United States*, 364 U.S. 350 [81 S.Ct. 147, 5 L.Ed.2d 120] (1960) be

abandoned and, if so, what standard should govern the materiality inquiry under 8 U.S.C. § 1451(a); and

"(b) is the determination of materiality under 8 U.S.C. § 1451(a) one of *law or fact.*

"(3) When a misrepresentation has been established as "material" within the meaning of 8 U.S.C. § 1451(a), must any further showing be made to establish that citizenship was "procured by" that misrepresentation."

*Kungys*, 108 S.Ct. at 1544 n. 4 (emphasis added) (brackets and ellipsis in original) (citation omitted).

28. As of the date of this opinion, all sources of the *Kungys* decision available to this court contain this flaw. *See, e.g., Kungys*, No. 86–228, slip op. at 10 (U.S. May 2, 1988), 56 U.S.L.W. 4373, 4376–77, [1987–1988 Transfer Binder] 48 S.Ct. Bull. (CCH) B1823, B1832, 108 S.Ct. 1537, 1547; 99 L.Ed.2d 839, 854 (1988).

decide a *Winship* challenge to *Sinclair*.[29] Rather, this court must decide whether the Supreme Court would agree with *Abadi*'s holding if it were faced with a *Winship* argument. It is therefore appropriate to examine *Abadi* footnote 2, which is apparently the only instance where a federal case has expressly rejected the *Winship* argument asserted in the case at bar.

First, the only authority offered by the Sixth Circuit to support its rejection of *Winship* was a "cf." cite to its own decision in *United States v. Giacalone*, 587 F.2d 5 (6th Cir.1978), *cert. denied*, 442 U.S. 940, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). *Abadi*, 706 F.2d at 180 n. 2 (citing *Giacalone*, 587 F.2d at 7). The very brief *Giacalone* opinion is simply another of the many cases that follow *Sinclair* without analysis, and it does not cite the *Winship* line or discuss the requirements of due process.[30]

*Abadi*'s persuasiveness must therefore turn on its reasoning, which consists solely of the statement that "the materiality requirement [i]s a judicially-imposed limitation to insure the reasonable application of the statute." *Abadi*, 706 F.2d at 180 n. 2. Presumably, the *Abadi* court's logic was that although an element of an offense explicitly provided for in the statute is obviously within the ambit of *Winship*, a requirement for conviction which is implied as a matter of statutory interpretation is outside the ambit of *Winship*.

While it may be correct to characterize materiality as "judicially imposed" with respect to violations provided for in the second and third clauses of the section 1001 agency perjury statute, *see* note 11 *supra*, at issue in *Abadi, see, e.g., United States v. Corsino*, 812 F.2d 26, 30 (1st Cir.1987); *United States v. Rinaldi*, 393 F.2d 97, 99–100 (2d Cir.), *cert. denied*, 393 U.S. 913, 89 S.Ct. 233, 21 L.Ed.2d 198 (1968); *Gonzales v. United States*, 286 F.2d 118, 120–21 & n. 2 (10th Cir.1960), *cert. denied*, 365 U.S. 878, 81 S.Ct. 1028, 6 L.Ed.2d 190 (1961), it is of course incorrect as a matter of law with respect to section 1001's first clause, which as noted above expressly requires that a falsified or concealed fact be material:

> Whoever ... [1] knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a *material* fact, or [2] makes any false, ficticious or fraudulent statements or representations, or [3] makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be [punished].

18 U.S.C. § 1001 (emphasis added). The materiality requirement of the first clause is unquestionably one that *Congress* created through the legislative process, not

---

**29.** The Supreme Court has declined to review similar challenges at least twice. *See Greber v. United States*, 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 348 (1985) (denying certiorari in *United States v. Greber*, 760 F.2d 68 (3d Cir.1985)); *Falco v. United States*, 460 U.S. 1068, 103 S.Ct. 1521, 75 L.Ed.2d 945 (1983) (denying certiorari in *United States v. Falco*, 697 F.2d 299 (2d Cir. 1982)). For discussion of the denial of certiorari in *Falco, see New York University Supreme Court Project*, 59 N.Y.U.L.Rev. 677, 1757–58 (1984).

However, at least one member of the Court believes the issue of materiality should be revisited. In *Greber*, Justice White issued a written dissent from denial of certiorari in which he recognized and argued that the Court should resolve the conflict between *Abadi* and similar cases on the one hand and *Valdez* and *United States v. Irwin*, 654 F.2d 671 (10th Cir.1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982), *see, e.g.*, notes 34–35 and accompanying text *infra*, on the other. *Greber*, 474 U.S. at 988, 106 S.Ct. at 396. It is also

worthy of note that Justice Kennedy, the author of *United States v. Larm*, 824 F.2d 780 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988), before he was elevated from the Ninth Circuit did not participate in *Kungys*, 108 S.Ct. at 1553, which may be one reason the Court did not focus on the materiality problem he raised in *Larm*. *See* notes 14–15 and accompanying text *supra*.

**30.** The only relevant authority besides *Sinclair* cited in *Giacalone* is *United States v. Beitling*, 545 F.2d 1106, 1109 (8th Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1977), which is another case that follows *Sinclair* in lock step, as are the cases *Beitling* relies on: *United States v. Phillips*, 540 F.2d 319, 328 (8th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976); *United States v. Lasater*, 535 F.2d 1041, 1047–48 (8th Cir.1976); and *United States v. Koonce*, 485 F.2d 374, 380 (8th Cir.1973).

one that judges have imposed.[31] Thus, whatever the merits of the Sixth Circuit's assertion that a judicially imposed element is not an "element" within the normal meaning of that term,[32] the *Abadi* court's reasoning is completely inapplicable to violations of the first clause of section 1001 [33] as well as other criminal statutes that have express materiality requirements. Given that Congress has expressly mandated materiality as a requirement for all convictions under the judicial perjury statute at issue in the case at bar, *see* note 1; note 16 and accompanying text *supra, Abadi* is therefore not on point. Accordingly, if when faced with a *Winship* challenge the Supreme Court were to reaffirm the rule of *Sinclair*, the Court would be highly unlikely to rely on the reasoning advanced in *Abadi*. By the same token, since the *Kungys* Court cited only *Abadi* while following *Sinclair*, *Kungys* itself is of little assistance here.

**31.** While it might be possible to make a rather circuitous argument that Congress was simply recognizing the common-law materiality requirement, and thus that even the first clause's mandate can properly be said to be "judicially imposed," the Sixth Circuit does not appear to have been making this argument in *Abadi* footnote 2. Even if it had, it is not apparent how this contention advances analysis. The fact that the requirements of codified offenses were judicially implied elements of common-law crimes is strong evidence that such requirements *are* elements of the statutory offense, not an indication that the requirements are *not* elements because they were originally "judicially imposed." *See, e.g.,* text accompanying note 16 *supra.*

**32.** It appears that the Ninth Circuit has specifically rejected this approach with respect to mail fraud under 18 U.S.C. § 1341. Although that statute does not expressly contain a materiality requirement, as discussed above the *Halbert* court explicitly implied one and found that it was error not to have the jury determine whether materiality had been proved. 640 F.2d at 1007–08; *see* notes 12–13 and accompanying text *supra.*

Similarly, the Supreme Court has found that an element must go to the jury even though it is implied rather than express. *See, e.g., Gypsum,* 438 U.S. at 434–46, 98 S.Ct. at 2871–73 (implying intent element into criminal antitrust offense and finding failure properly to instruct jury regarding element was error); *Morrissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (same with respect to theft statute).

Far more apt is the analysis of *United States v. Irwin,* 654 F.2d 671 (10th Cir. 1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982). In upholding an agency perjury conviction under section 1001, the Tenth Circuit stated that:

> We ... remain convinced that materiality is a factual question to be submitted to the jury with proper instructions like other essential elements of the offense, unless the court rules, as a matter of law, that no submissible case is made out by the Government on the issue of materiality.

*Irwin,* 654 F.2d at 677 n. 8.[34] *Irwin* thus viewed the determination of materiality as one of fact for the jury *ultimately,* unless the court is able to determine, *preliminarily,* that as a matter of law the issue—and therefore the charge of which it is an element—cannot reach the jury.[35]

**33.** The appellant in *Abadi* had been convicted for making false statements to the Medicaid program by billing for osteopathic treatments he did not perform. *Abadi,* 706 F.2d at 179. Although the opinion unfortunately is not explicit on this point, it is apparent that the Sixth Circuit analyzed the convictions as violations of the second clause of section 1001. *See* 706 F.2d at 180 & n. 2. At any rate, no reasoning in *Abadi* suggests that the Sixth Circuit would find that the standard requirements of *Winship* would not apply to a materiality element that has been congressionally mandated rather than judicially imposed.

**34.** While not expressly discussing *Winship,* the *Irwin* court cited its previous decisions in *United States v. Radetsky,* 535 F.2d 556, 571 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976); *id.* at 582–83 (Barrett, J., concurring in part and dissenting in part); *United States v. Weiss,* 431 F.2d 1402, 1406 & n. 3 (10th Cir. 1970); and *Gonzales,* 286 F.2d at 122, all of which appear to have taken it for granted that the fundamental principles which *Winship* clarified require that materiality be for determination by the jury.

**35.** Although the Tenth Circuit has reached a contrary conclusion with respect to several statutes including the section 1623 judicial perjury offense here at issue, *see, e.g., United States v. Larranaga,* 787 F.2d 489, 494 & n. 1 (10th Cir. 1986), this does not detract from the force of the reasoning in *Irwin,* which has not been overruled. Moreover, like the Ninth Circuit in *Larm,* the Tenth Circuit in these contrary cases has not suggested a principled basis to distin-

A number of state courts [36] have reached a similar conclusion. As mentioned previously, the high court of Massachusetts did so in a decision more thorough than any federal case. *See Commonwealth v. McDuffee*, 398 N.E.2d 463 (1979). After analyzing *Sinclair* at length, the court found that the authority on which *Sinclair* was based has been "eroded seriously." *McDuffee*, 398 N.E.2d at 468. Noting that materiality could turn on the resolution of factual disputes, the *McDuffee* court "s[aw] no justification for removing the issue from the jury." *Id.* at 469. Furthermore, *McDuffee* found that:

> [T]he complexity of a legal concept should not justify removing an element of a crime from the jury's determination where there are underlying factual determinations to be made. Certainly in a murder case we would not remove the element of malice aforethought from the jury simply because a judge is better suited to apply that complex and elusive concept to the facts of the case.

*Id.* at 470.

Similarly in *People v. Figueroa*, 41 Cal. 3d 714, 733 n. 22, 224 Cal.Rptr. 719, 715 P.2d 680 (1986) (citations omitted), in the course of determining that *Winship* requires that the jury decide the question whether a purported corporate promissory note was a security, the California Supreme Court observed that "the continuing validity of [*Sinclair*] may be doubtful in light of *In re Winship* and *Connecticut v. Johnson*." In the very recent case of *People v. Hedgecock*, 201 Cal.App.3d 174, 221–23, 247 Cal.Rptr. 404 (1988), *petition for review granted* 250 Cal.Rptr. 268, 758 P.2d 596 (1988), the California Court of Appeal viewed *Figueroa*'s rationale as compelling the conclusion that materiality in a state perjury prosecution is a matter for the jury.[37]

Although a number of fairly recent state cases have ruled to the contrary, none of these decisions has supported its conclusions with compelling reasoning. *See, e.g., State v. Strand*, 720 P.2d 425, 430–31 (Utah 1986); *State v. Sands*, 467 A.2d 202, 215–17 (N.H.1983); *State v. Albin*, 720 P.2d 1256, 1258–60 (N.M.Ct.App.1986); *People v. Powell*, 160 Ill.App.3d 689, 112 Ill.Dec. 553, 556–57, 513 N.E.2d 1162, 1165–66 (1987), *appeal denied*, 118 Ill.2d 549, 117 Ill.Dec. 230, 520 N.E.2d 391 (1988).

In sum, no precedent is clearly dispositive of the question before the court, but the most persuasive published reasoning strongly indicates that the ultimate determination of materiality is a question for the jury.

Although as noted above the government relies only on the reasoning contained in *Sinclair* precedent, it is appropriate to consider on what other rationale the *Sinclair* rule might be sustained. First, it might be argued that materiality is not an element of perjury after all. However, this approach appears to be effectively foreclosed for the reasons discussed above. *See* notes 16–20 and accompanying text *supra*.

Second, it might be maintained that even though materiality *is* an element, it is a different kind of element from the kind that *Winship* requires must be decided by the jury. For example, it might be advanced that there is a difference between elements that are "essential" and others that are merely "requirements." *Cf., e.g.,* text preceding note 16 *supra*. In this case at least, any such argument would appear to be simply semantic. *See id.*

Finally, a related argument might be made to the effect that although materiality is an element, *Winship* does not apply to some elements of offenses. At the outset, it would seem plain that this argument was rather specifically foreclosed long before

guish its conflicting results. *See, e.g., Larranaga*, 787 F.2d at 494 & n. 1.

**36.** For a collection and discussion of the numerous state cases regarding materiality, *see generally* Annotation, *Materiality of Testimony Forming Basis of Perjury Charge as Question for Court or Jury in State Trial*, 37 A.L.R.4th 948 (1985 & Supp.1987).

**37.** In particular, *Hedgecock* found that *Figueroa* had impliedly overruled *People v. Pierce*, 66 Cal.2d 53, 61, 56 Cal.Rptr. 817, 423 P.2d 969 (1967), in which California's high court had previously stated that materiality was a question of law for the court. *Hedgecock*, 201 Cal.App.3d at 222, 247 Cal.Rptr. 404.

*Winship* confirmed its general invalidity. For example, in *Quinn v. United States,* 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964 (1955), regarding the very statute at issue in *Sinclair,* the Supreme Court stated:

> Section 192, like the ordinary federal criminal statute, requires a criminal intent—in this instance, a deliberate, intentional refusal to answer. This element of the offense, *like any other,* must be proved beyond a reasonable doubt.

*Id.* at 165, 75 S.Ct. at 674–75 (footnote omitted) (emphasis added). Nonetheless, this radical argument is apparently the rationale underlying the portion of *Abadi* quoted by the Supreme Court in *Kungys* to the effect that materiality is a question of law because "the ultimate finding ... turns on an interpretation of substantive law," even though that interpretation "rests upon a factual evidentiary showing." *See Kungys,* 108 S.Ct. at 1547 (quoting *Abadi,* 706 F.2d at 180).

Such an argument proves far too much. This court is at a loss to understand how an element "rest[ing] upon a factual evidentiary showing" can seriously be said to be so purely legal that the court rather than the jury may decide it. At least *some facts* concededly must be found. Whatever may be said about whether a given element should be characterized as primarily legal or mixed or essentially factual, *see, e.g., Johnson,* 718 F.2d at 1321–22, it is quintessentially the jury's task to find the facts that support a criminal conviction. The suggestion that the court rather than the jury may find them flys in the face of the most basic conception of the rights to due process and a jury trial. As the Supreme Court has repeatedly emphasized:

> "[W]e explicitly hold that the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt *of every fact* necessary to constitute the crime with which he is charged." [*Winship,* 397 U.S.] at 364 [90 S.Ct. at 1072] (emphasis added).

*Sandstrom,* 442 U.S. at 520, 99 S.Ct. at 2457. Nor is there any doubt that the determination of such facts by the court rather than the jury would impermissibly " 'invade [the] factfinding function' which in a criminal case the law assigns *solely to the jury." Id.* at 523, 99 S.Ct. at 2459 (quoting *Gypsum,* 438 U.S. at 446, 98 S.Ct. at 2878) (brackets in original) (emphasis added). Even where the evidence supporting a factual finding is overwhelming, it is error for the court rather than the jury to make the finding. *See, e.g., Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 3106–08, 92 L.Ed.2d 460 (1986); *Martin Linen,* 430 U.S. at 572–73, 97 S.Ct. at 1355. Thus, as noted above, *Winship* analysis makes it very clear that:

> Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime.

*Cabana v. Bullock,* 474 U.S. 376, 384–85, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986) (citations omitted). Accordingly, the court does not believe that the Supreme Court would accept this argument in a case such as this.[38]

### CONCLUSION

Unlike the courts in cases such as *Kungys* and *Larm,* this court has been presented with a compelling reason to reassess *Sinclair* 's dictate that materiality is always a question of law for the court. The compelling reason is defendant's due process argument based on *Winship* and its

---

**38.** This belief is strengthened because such an argument would not seem to be limited to the materiality context, since a great many elements of offenses could similarly be characterized as "turning on an interpretation of substantive law." Acceptance and application of this argument obviously would transform and to a considerable extent eviscerate the role of the jury. *See, e.g., State v. Gallegos,* 644 P.2d 545, 547–48 (N.M.Ct.App.) (Hendley, J., dissenting) ("In my view, the only reasons to make materiality a matter of law are for ease in administration and

because we think that somehow the jury will have difficulty grappling with such a complex concept. I see this reasoning as beginning a dangerous trend, which, if carried to its logical conclusion, will only have the jury instructed on one element for every crime: he [or she] did it." (brackets in original)), *cert. denied,* 648 P.2d 794 (N.M.1982). The court thinks it highly unlikely that the Supreme Court would adopt an analysis the logical application of which would likely have such results.

kin. While many cases have found the emperor's traditional raiment too impressive to question, the court believes that a fresh eye cannot fail to see that the analysis of *Winship* has stripped away *Sinclair*'s cloak of authority. Although it is of course possible that the Supreme Court would find otherwise, this court does not believe that in this case the rule of *Sinclair* can survive because it is an "historical exception" or on other grounds. Instead, this court is convinced that the Supreme Court has implicitly overruled *Sinclair* in its *Winship* cases. The interests of defendant in his constitutional rights to due process and a jury trial—rights clearly guaranteed by *Winship* authority—outweigh any opposing interests in preserving an anachronistic rule that has survived so long only because it has not been scrutinized sooner.

This court finds that the reasoning implicitly contained in cases such as *Valdez* and *Irwin* is controlling. Preliminarily, when in the posture of a threshold matter such as the relevancy of evidence or the adequacy of an indictment, materiality is properly treated as a question of law for the court; but ultimately, in its aspect as an element of perjury, materiality, like all elements, is a question for the jury. The government's motion for a determination by the court that the alleged false declarations of defendant are material accordingly must be denied.[39]

As decided at oral argument, IT IS SO ORDERED.

---

**39.** While it may be true that it is sometimes harmless error for a court to decide the issue of materiality rather than to let the jury decide it, *e.g., Valdez,* 594 F.2d at 729 ("[I]n view of the overwhelming evidence against the [defendants] on the other essential elements, and the fact that the materiality of the statements was so *clearly* established, the failure to submit the issue to the jury was harmless beyond a reasonable doubt under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). No reasonable jury could have reached any other conclusion." (emphasis in original) (citations omitted)); *but* *see, e.g., Rose,* 106 S.Ct. at 3106–08 & n. 8 (apparently assuming that complete failure to instruct on an issue can never be harmless where doing so removes the facts underlying that determination from the jury's consideration, because "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury" and removing an element from the jury is equivalent to a directed verdict), that of course is not reason to commit the error in the first place when it may be avoided altogether.