### COTHRAN *v.* STATE, 39 Miss. R., 541.

#### PERJURY.

To support an indictment for perjury, it must be shown that the false swearing was not only intentional, but wilful and corrupt, and was in relation to a material matter in issue before the court where the false swearing was done.

If the court instruct the jury that they must convict if the false swearing was done wilfully, without stating that it must have been done corruptly, it will be error.

Whether the false swearing alleged was material in a former suit, is a matter of law to be judged of by the court, and not a matter of fact to be submitted to the jury.

Error to Pike circuit court.  McNAIR, J.

Elijah Cothran, the plaintiff in error, was indicted in the court below for perjury, alleged to have been committed by him as a witness in a cause tried in the circuit court of Pike county, wherein he was plaintiff, and A. J. Andrews was defendant.  It was an action of trespass, to recover damages against Andrews for taking away from Cothran a slave named Wiley, in January, 1860.  In said suit Cothran claimed possession of the slave, under an alleged contract of hire for the year 1860, Andrews being the owner of the slave.  That case turned upon the question whether Cothran had made a conditional or absolute contract for the hire of said slave.

The first count in the indictment averred, that it was a material inquiry in said trespass-suit, "Whether said A. J. Andrews had hired said slave Wiley to said Elijah Cothran for the year 1860, upon the condition that said Cothran first paid said Andrews for the hire of said slave for the year 1859;" and the perjury alleged was, that Cothran swore "that he did not hire said slave from said A. J. Andrews for the year 1860,

on the condition that he was first to pay said Andrews for the hire of said slave for the year 1859; whereas, in truth and in fact, he, the said Cothran, did hire said slave Wiley from said A. J. Andrews, on the express condition that he was first to pay said Andrews for the hire of said slave for the year 1859."

In the second count it was averred, that it was a material inquiry in said trespass suit, "whether said Elijah Cothran hired the said slave Wiley from said A. J. Andrews for the year 1860;" and that Cothran had testified that he did hire the said slave for the year 1860; when in truth and in fact he did not hire the slave from Andrews for that year.

Cothran pleaded not guilty.

On the trial the trespass-suit of Cothran vs. Andrews was read to the court and jury. It was proven on behalf of the state, that Cothran was duly sworn as a witness in that case, and that as such witness he deposed and testified, "that he had hired a certain negro boy named Wiley from the said A. J. Andrews, for the year 1860; that said hiring was done in the latter part of December, 1859, for the sum of one hundred and fifty-five dollars and twenty-five cents; that the twenty-five cents were added because another person had offered one hundred and fifty-five dollars for the negro, and that Andrews was desirous that he, Cothran, should have the negro, if he would bid over one hundred and fifty-five dollars, which he did by adding twenty-five cents; that no person was present when said contract was made; that it was made at his house. That said hiring was unconditional, but that he was to pay the amount thereof at the end of the year 1860. That he had hired said slave for the year 1859, and had not paid for the same, but that the payment of the hire for 1859 formed no part of the consideration for the hiring for the year 1860."

A. J. Andrews was then introduced, and testified, that Cothran had hired the slave Wiley from him in the year 1859, and in the first or second week of December of that year, Cothran applied to him to hire Wiley for the ensuing year, which witness agreed to do upon the condition that he would pay witness one hundred and forty-five dollars, the amount Cothran owed for the hire of 1859, and which would be due on the 1st of Janu-

ary, 1860. The amount agreed on for the hire of 1860 was one hundred and forty-eight dollars, or one hundred and forty-eight dollars and fifty cents (witness did not recollect which), payable at the end of that year. Amos Greer was present at the making of the contract, and the same was made while they were sitting on a log near Cothran's house. Afterwards, during the Christmas holidays of 1859, the hire for that year still remained unpaid; Cothran informed the witness that he would not be able to pay the whole amount of said hiring for 1859 at the time promised, whereupon witness agreed to take from defendant one-half of the hire of 1859, and wait until the end of 1860 for the balance; to which Cothran agreed, and promised to meet witness at Holmesville on the last day of December, 1859, and pay him. Witness went to Holmesville on that day, but Cothran did not come. Witness then allowed the slave Wiley to remain with Cothran another week, to give him a chance to pay witness the sum last agreed upon, but the defendant failed to do so; whereupon witness, on January 14, 1860, sent for and took away the negro without further consultation with, or notice to, Cothran. Witness admitted that he went with Dennis Dunaway and others to defendant's house some time in December, 1859, but denied that any contract for hiring was made on that day. Witness stated that, by the agreement aforesaid, the contract for hiring was made on that day. Witness stated that, by the agreement aforesaid, the contract of hiring was not complete unless the money was paid as agreed upon.

Witness admitted, on cross-examination, that he had stated to several persons that no person was present at the making of said contract of hiring but Cothran and himself. He did not recollect of ever having admitted it to Fielding Dunaway, at any time in Holmesville. That when he made such admission he had forgotten that Amos Greer was present, but afterwards, recollecting it, he asked Greer about it, who informed him of a good many things connected with said contract which he had forgotten.

Amos Greer, for the state, testified that he was present at Cothran's house in the first or second week in December, 1859, when Andrews and Cothran made a contract for the hire of the

slave Wiley, for the year 1860, and in relation to said contract testified as Andrews had already done. He further stated, that he went to defendant's house with Andrews, but walked down the hill before the conversation about the contract commenced, but returned while it was going on.

John Fisk, for the state, testified that he saw Cothran about the last of December, 1859, or first of January, 1860, trying to borrow money, which he said he was to carry to Holmesville the next day to pay to Andrews for the hire of a slave.

Dennis Dunaway, for the defense, testified that between the 15th and 25th of December, 1859, he offered to Andrews (who was then at witness' house) one hundred and fifty-five dollars for the hire of Wiley for the year 1860; that Andrews said he could not hire him to witness without first seeing Cothran; that thereupon he and witness went by John Cothran's house, and thence he, Andrews, and John Cothran went together to defendant's house. Defendant and Andrews then engaged in a private conversation, which witness did not hear. Witness and Andrews, after taking dinner with defendant, returned together, and Andrews informed him that he could not get the boy; that "he reckoned that he should let the defendant have him," or something to that effect. Amos Greer was not at defendant's that day while witness was there.

John Cothran, for the defense, testified that he went with Andrews and Dunaway to defendant's house; that he was interested in the hire of the negro. He went out in the yard, where defendant and Andrews were talking together about the hire of the negro, and heard nothing said about payment of the hire of 1859 being a condition to the hiring. Witness went away before the contract was concluded. Before witness left he stated to the defendant, in the presence and hearing of Andrews, that whatever the defendant did about the hiring, he, witness, would be satisfied with. In a few days afterwards witness met Andrews, who informed him that he had hired the negro to the defendant for one hundred and fifty-five dollars and twenty-five cents, but said nothing about any condition in the hiring.

Fielding Dunaway testified that some time in the spring of

1860, he and Andrews were conversing in Holmesville about the trespass-suit then pending about the negro Wiley, between him and the defendant, when Andrews said he had heard that John Cothran would swear that he (Cothran) was present and heard the contract between him (Andrews) and defendant for the hire of the slave Wiley for the year 1860; that if John Cothran did swear he was present he would swear a lie, for that nobody was present at the making of the contract but himself and defendant.

John Reid testified that in the latter part of December, 1859, he called on Andrews to hire a negro for the year 1860, when Andrews told him he need not make any offer for Wiley, as he had already offered him to Elijah Cothran.

A. J. Andrews was reintroduced by the state, and testified that neither Dunaway nor John Cothran was present at defendant's house at the time he made the contract for the hiring of Wiley. That he was at defendant's house twice in December, 1859.; the first time was when the contract was made; the second visit was for the purpose of ascertaining whether defendant had made threats against the boy Wiley.

The instructions given for the state, and those asked by the defendant and refused, are fully set out in the opinion of the court.

The defendant was convicted, and upon his motion for a new trial being overruled, he excepted, and sued out this writ of error.

*D. W. Hurst* and *Thos. Hoover*, for plaintiff in error.

*T. J. Wharton*, attorney general.

HARRIS, J.:

The defendant, Elijah Cothran, was indicted in the court below for perjury, and convicted; on the trial the two first instructions asked by the state were given and excepted to. A motion was made for a new trial and refused, and bill of exceptions taken and allowed, presenting the questions now relied on for error.

The instructions were as follows: 1. "If the jury believe,

from the evidence, that on Wednesday last, 1860, in this court and county, the trial of the suit for damages of *Elijah Cothran* v. *A. J. Andrews*, said Elijah Cothran being sworn, testified that he hired the negro Wiley from A. J. Andrews for the year 1860, and that the contract of hire was absolute and not conditional; that he was, first, to pay Andrews for the hire of the negro for the previous year; and if the jury then believe, upon the evidence of two witnesses, or one witness and corroborating circumstances, that statement untrue, and that Cothran did not hire the negro absolutely, but on condition that he was to pay for the hire of the negro for 1859, then the defendant is guilty of perjury, and the jury should so find; if they further believe, from the evidence, that the testimony of Elijah Cothran was material to the issue in the case between him and Andrews, and that such swearing was wilfully done."

2. "If the jury believe, from the evidence of two witnesses, or one witness and corroborating circumstances, that the defendant was to have the slave for the year 1860, only on the condition precedent that he, Cothran, first paid for the hire of the slave for the year 1859, then, unless the condition was complied with, it did not amount in law to a hiring of the slave; and if the jury believe, from the evidence, that Cothran swore that he hired the slave absolutely, the jury may find the defendant guilty of perjury under the second count of the indictment, if the case is otherwise made out."

These instructions were both erroneous. The first, because it authorizes a conviction if the jury believe that the *swearing* was *wilful*, though not *corrupt*. The instruction should have added the word " corruptly " after the word " wilfully," according to the language of the statute, or used other language indicating to the jury that the *swearing* must be *intentionally false*. The *false swearing* must be *wilful*, both in its *falsity* as well as the act of swearing.

The instruction is further erroneous in submitting to the jury, as a question of fact, the materiality of the defendant's statement on oath as witness in the trial of the case against Andrews. When the record of that suit was produced, and the issue joined between the parties thereto brought before the court and jury

on the trial of the defendant, and his statement on oath as a witness in said cause proven, its *materiality* to support that issue was a question of law for the court, and not a question of fact for the jury.

The second instruction is erroneous because it is founded upon the supposition that there was evidence before the jury that defendant was to have the slave for the year 1860, only on the condition precedent that the defendant first paid *the whole hire of the slave for the year* 1859; and when the evidence shows conclusively that no such contract existed between the defendant and said Andrews, but that if such a contract was ever made, it had been changed and a new contract made.

It is further erroneous in charging the jury that if defendant swore that he hired the slave absolutely, the jury may find him guilty of perjury under the second count of the indictment, *if the case is otherwise made out.*

This latter part of the second charge, even if there had been no objection to the first, wholly omits the important qualifications that they should also believe that the swearing was *wilful and corrupt*, and substitutes therefor this vague and uncertain language, " if the case is otherwise made out."

As the case must be reversed for these errors in the instructions, we forbear from any notice of the other grounds of error which relate to the correctness of the finding of the jury in the court below.

For the errors in the instructions of the court above noticed, let the judgment be reversed, cause remanded, and a *venire de novo* awarded.