523 So.2d 296 (1988)
John Tailer GULLETT, III
v.
STATE of Mississippi.
No. 57119.
Supreme Court of Mississippi.
February 24, 1988.
As Modified on Denial of Rehearing May 4, 1988.
Richard J. Lee, Wilroy, Lee & Scott, Hernando, for appellant.
*297 Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROBERTSON, Justice, for the Court:

I.
Today's is a case of overkill. Miffed at a prior acquittal in a capital murder trial, the prosecution sought and obtained a perjury indictment against an important defense witness. Then, in its zeal to get even with the alleged perjurer, the prosecution in the case now under review offered substantial quantities of marginally relevant hearsay evidence, admission of which was error.
For the reasons stated below, we reverse and remand for a new trial.

II.
In March, 1982, James Williamson (hereafter "Williamson") was allegedly murdered in Yalobusha County, Mississippi. On January 27, 1983, his wife, Cecilia "Cookie" Williamson, Larry Shelton Hentz and Owen Lee Harden were indicted for the capital murder of Williamson. The causes were severed, and a change of venue was granted to each Defendant. Pursuant to a change in venue, Owen Lee Harden was tried in the Circuit Court of DeSoto County, Mississippi, in July, 1983, and acquitted.[1]
John Tailer Gullett, today's Defendant/Appellant, was called by the defense at the Harden trial to impeach the prosecution's star witness, Roger Lynn Hentz (hereafter "Roger Lynn"). Gullett testified that Roger Lynn had told Gullett that he (Roger Lynn) had killed James Williamson, and further that Owen Lee Harden did not participate in Williamson's murder.
Following Harden's acquittal, the prosecution had Gullett indicted for perjury. Miss. Code Ann. § 97-9-59 (1972), charging that Gullett had lied at the Harden trial. Gullett waived arraignment and pled not guilty on March 21, 1984. His trial began June 25, 1984.
The prosecution's proof consisted of the testimony of Roger Lynn Hentz plus evidence of corroborating circumstances. The prosecution first introduced the Harden indictment followed by the transcript of Gullett's testimony in the Harden trial. Thereafter, the prosecution called Roger Lynn Hentz, who denied ever making any statements to Gullett about the murder of James Williamson. Further, Roger Lynn denied that he and Gullett had ever been friends while incarcerated.
The prosecution then called Panola County Sheriff David Bryan, the former sheriff of DeSoto County, District Attorney Bobby Williams and his wife Vickie to prove that Owen Lee Harden confessed to killing James Williamson. Sheriff Bryan testified that Harden, while incarcerated in the Yalobusha County Jail, confessed to killing Williamson. Bryan then testified that Harden called District Attorney Williams, making the same confession that he made to Bryan. Vickie Williams, the District Attorney's wife, testified, over defense objection, that she overheard Harden's confession to her husband. District Attorney Williams testified that Harden indeed made such a confession over the telephone. Additionally, the prosecution further produced Barry Joe Tutor, who testified that Harden had told him he had killed a man, but did not identify this man.
District Attorney Williams offered further his opinion about the materiality of Gullett's statement at Harden's trial. Williams testified that, in his judgment, Gullett's testimony "allowed a guilty man *298 to walk." The prosecution went further, and asked Williams what was the jury verdict in the Harden trial. Williams responded: "The net result of the jury verdict let a cold-blooded hired killer walk out of this Courthouse a free man." Defense counsel immediately objected, and the Circuit Court sustained the objection, admonishing the jury to disregard Williams' response.
More testimony pertaining to materiality was elicited from Circuit Judge Andrew Baker, the judge who presided over the Harden trial. The prosecution asked Judge Baker if he had an opinion as to whether Gullett's testimony played any part in Harden's acquittal. Over defense counsel's objection, Judge Baker testified that he thought Gullett's testimony was "material to the outcome of the case."
Other evidence was elicited via Joy Hentz, mother of Roger Lynn and Larry Shelton Hentz. First, over timely defense objection, the prosecution introduced letters that Larry Hentz, Roger Lynn's brother, had written to their mother, Joy, following Harden's acquittal. It will be remembered that Larry Hentz was one of those jointly charged with Harden and Cookie Williamson for the murder of James Williamson. The prosecution argued that these letters[2] were evidence that Larry Hentz and John Gullett were friends, and such evidence allegedly indicated a motive for Gullett to commit perjury at Harden's trial.
Second, the prosecution elicited testimony from Joy Hentz that she took money to Larry Hentz while he was in jail, thus attempting to set up the inference that Larry could have bribed Gullett to lie. Specifically, Joy testified over defense counsel's objection that she had taken Larry his federal and state income tax refunds during the spring of 1983 while he was in the DeSoto County jail. The prosecution referred to both these items (letters and money) during closing argument.
At the close of the State's case-in-chief, defense counsel moved for a directed verdict. This motion was denied, and the defense then presented its proof.
Gullett first called David Glenn, who had been incarcerated with Roger Lynn and Gullett in Parchman and Jerry Sinquefield, who had been incarcerated with Roger Lynn and Gullett in the DeSoto County jail. Glenn testified he had seen Gullett and Roger Lynn talk, and they seemed to be friends. Sinquefield testified that Gullett and Roger Lynn knew each other, and he had seen them speak before and play games in their cell.
Gullett then called Lacy Murphree, a family friend of the Hentz', who testified that she had heard Roger Lynn say that he lied at the Harden trial due to pressure placed upon him by District Attorney Williams.
Gullett called Larry Hentz to testify on his behalf. Larry was the brother of Roger Lynn, and was incarcerated at Parchman at the time of this trial. Larry testified, corroborating Lacy Murphree's testimony, that Roger Lynn told him he had lied at Harden's trial because of pressure from District Attorney Williams. Larry refuted his mother's testimony that she had brought him his federal and state income tax refund checks while in jail. Larry also testified that Roger Lynn told him that he had confessed Williamson's murder to Gullett. Larry identified the letters he had written to his mother, previously admitted at trial, and testified that he did not dominate Gullett at all, only that he knew about the fact that Roger Lynn had told Gullett about killing Williamson and that he (Larry) shared this fact with Harden's attorney before trial. Larry testified that Harden's attorney went to Gullett and discussed the matter alone with Gullett. Indeed, Larry testified that Gullett had left the DeSoto County jail where Larry was two months before Harden's trial, therefore there was no way Larry could have dominated him.
The prosecuting attorney conducted an extensive and brutal cross-examination of Larry Hentz. Included in this encounter were many items of testimony challenged by defense counsel on appeal as being unduly prejudicial. Additionally, Larry chose *299 to plead the Fifth Amendment on many instances, and the Circuit Court held him in contempt, subsequently sentencing him to 180 days imprisonment for the contempt charge. See Hentz v. State, 496 So.2d 668 (Miss. 1986).
Finally, Defendant Gullett took the stand. He testified that he was incarcerated with Roger Lynn Hentz in the DeSoto County Jail where they became friends. Gullett further testified that Roger Lynn had told him that he had killed James Williamson, as Gullett testified at Harden's trial. Gullett testified that he did not know whether Roger's statement was true, only that Roger had said it.
Thereafter, the prosecution briefly called Joy Hentz and Circuit Clerk Martin in rebuttal. Defense counsel then renewed his motion for a directed verdict, which was denied. The jury returned a verdict of guilty, and Gullett was subsequently sentenced to thirty years imprisonment pursuant to Miss. Code Ann. § 97-9-61 (1972). Following denial of his motions for judgment of acquittal notwithstanding the verdict or for a new trial, Gullett has brought this appeal.

III.

The Letters Larry Hentz Wrote His Mother
During direct examination of Joy Hentz, Larry Hentz' mother, the prosecution introduced two letters written by Larry to Joy shortly after the trial of Owen Lee Harden. Gullett objected, but the Circuit Court overruled his objection and admitted the letters apparently on the theory that such letters were relevant to prove Gullett's motive and intent to commit perjury. At trial the prosecution made particular reference to several sentences in one of the letters:
And as far as John Gullett, he didn't hurt Roger Lynn he just helped Lee [Owen Lee Harden]. He is a friend of mine and a real good one now, that is what beat the case for Lee. I had him all time but I would not tell anyone about him until I was sure Lee was going to trial. I told them about a week ago about him and he is the one that pulled it out for us....
Indeed, the prosecution referred to this language in closing argument as solid proof of Larry's bribery of Gullett.
Statements other than those made by the declarant while testifying made out of court by another and offered in evidence to prove the truth of the matter asserted constitute inadmissible hearsay.[3]Gates v. State, 484 So.2d 1002, 1007-08 (Miss. 1986); Fuselier v. State, 468 So.2d 45, 52 (Miss. 1985); Lee v. State, 338 So.2d 395, 397 (Miss. 1976); Ellis & Williams Mississippi Evidence § 8-1 (1983); cf. Rule 801, Miss. R.Ev. Such out of court statements can be made orally or in the form of a writing, as is the case here.
The letters Larry Hentz wrote his mother are hearsay. There was no showing that Larry Hentz was unavailable to testify, nor may the letters be fitted within any real or imagined exception to the hearsay rule. The letters are at best tangentially relevant to an issue in the case, see Foster v. State, 508 So.2d 1111, 1117-18 (Miss. 1987); Jenkins v. State, 507 So.2d 89, 91-93 (Miss. 1987). Admission of these letters was error.

IV.

Owen Lee Harden's Confessions
The prosecution offered testimony from former Sheriff Bryan, District Attorney Bobby Williams and his wife Vickie, to the effect that Owen Lee Harden had confessed to them that he killed James Williamson. Sheriff Bryan testified that Harden confessed to him while in the Yalobusha County Jail that he had killed James Williamson. Vickie Williams, wife of District Attorney Bobby Williams, was permitted to testify that Owen Lee Harden called their home and she listened while Harden confessed the murder of James Williamson *300 to her husband Bobby Williams over the phone. Bobby Williams was permitted to testify about this phone conversation, telling the jury what Harden told him when he called.
But Harden's confession is hearsay. Harden's confession is not admissible under any exception to that rule of which we are aware. See Fermo v. State, 370 So.2d 930, 934 (Miss. 1979); Lee v. State, 338 So.2d 399, 402 (Miss. 1976) and Thompson v. State, 309 So.2d 533, 534-35 (Miss. 1975). In each of those three cases, as here, the so-called confession of the third party came from a person who was not present to testify at trial. Accordingly, the defense in each instance sought to introduce the hearsay version of the so-called confession under the declaration against penal interest exception to the hearsay rule. In each of those cases the person who gave the so-called confession was not a party to the proceedings nor was that person's testimony available in any form. Typical of the Thompson-Lee-Fermo holdings is the statement in Fermo that:
We hold, therefore, that ... where the declarant is not available his out of court declarations against penal interest are not sufficiently trustworthy to justify the court in making an exception to the hearsay rule.
370 So.2d at 934. If the defense may not offer the hearsay confession of another not present to testify, the prosecution labors under a similar disability. Assuming relevance  a point not at all free of doubt, admission of the Harden confession violated the hearsay rule and was error. This error, coupled with that found in Part III above, cast sufficient doubt upon the fairness of the trial Gullett received that reversal is required.

V.

The Opinion Testimony Of The Circuit Judge and District Attorney 
On Issue Of Materiality
Gullett next assigns as error admission of the opinion testimony of both District Attorney Williams and Circuit Judge Baker on the issue of materiality. The testimony was offered by the prosecution in the context of its obligations to establish that Gullett's allegedly false swearing was material to the determination of some issue of consequence in the Harden murder trial. See Roberts v. State, 224 Miss. 754, 759, 80 So.2d 841, 843 (1955).
As to materiality, the State questioned District Attorney Williams as follows:
Q. Having reviewed that testimony [Gullett's at trial of Harden], do you recall what part, if any, that testimony played in the defense of Owen Lee Harden?
A. Yes, sir.
Q. What part was it?
A. In my judgment, it's what allowed a guilty man to walk.
Thereafter, the prosecution called Circuit Judge Andrew C. Baker, who presided over the Harden trial, and questioned him, over Defendant's objection, about materiality:
Q. Do you have an opinion as to whether John Tailer Gullett, III's testimony in the trial of State of Mississippi v. Owen Lee Harden played any part at all in the acquittal of Owen Lee Harden?
A. Yes, sir, I think it was material to the outcome of the case.
The question of materiality in a perjury case is one for the court to determine, not the jury. See Brewer v. State, 233 So.2d 779, 782 (Miss. 1970); Saucier v. State, 95 Miss. 226, 234, 48 So. 840, 841 (1909); Cothran v. State, 39 Miss. 541, 547 (1860). Indeed, this view is reflected as being that of our state and many others in Annot., Materiality of Testimony Forming Basis Of Perjury Charge As Question For Court Or Jury In State Trial, 37 A.L.R.4th 948, 953-54 (1985). Ordinarily, materiality may be shown by offering that portion of the prior proceedings necessary to identify matters there at issue. The trial judge may then consider the alleged perjured testimony in light of the issues and resolve the materiality question. The trial judge in a perjury trial should be sensitive to the possibilities that presence of and identification of another judge and the district attorney on the side of the *301 prosecution may substantially prejudice the defendant in the eyes of the jury. Still, we should not hold that such evidence is never admissible. Where the prosecution offers witnesses to prove materiality, ordinarily we do not reverse. See Brewer, 233 So.2d at 782; Saucier, 95 Miss. at 234, 48 So. at 841; Cothran, 39 Miss. at 547. This assignment of error is rejected.
There is a related matter. District Attorney Williams in a fit of pique proclaimed from the witness stand:
The net result of the jury verdict [at Harden's capital murder trial] let a cold-blooded hired killer walk out of this courthouse a free man.
The defense attorney objected to this remark as inflammatory and prejudicial. The Circuit Court promptly sustained the objection and instructed the jury to disregard it. The remark was obviously made in a fit of pique. We are confident the district attorney knows better and that the comment will not be repeated upon remand.

VI.

Motions For J.N.O.V. and New Trial
At the close of the State's case-in-chief, Gullett moved for a directed verdict, which the Circuit Court denied. After both parties had rested, Gullett renewed his motion for directed verdict. Following the jury verdict, Gullett moved for a j.n.o.v. and a new trial. Gullett now assigns as error the denial of these motions.
We have held that a good bit of the evidence offered by the prosecution should not have been admitted at the trial below. This should not obscure the fact that Roger Lynn Hentz testified quite unequivocally that he made no confession to Gullett that he, Roger Lynn, killed Williamson.
In cases such as this, where on appeal we hold that a part of the case for the prosecution should have been excluded, but where there is other, admissible evidence pointing substantially to guilt, the jurisprudentially sound course is to vacate the conviction and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
HAWKINS, P.J., concurs in part and dissents in part by separate written opinion.
HAWKINS, Presiding Justice, concurring in part and dissenting in part:
I agree that this case should be reversed because of the admission of the letters from Larry Hentz to his mother as part of the State's case in chief, and also the testimony of the circuit judge and district attorney that Gullett's testimony on the Harden trial was material.
There would be nothing whatever wrong, however, in permitting the State to use these letters to impeach Larry Hentz if he takes the witness stand. Williamson, Harden and Larry Hentz were indicted for capital murder in which the three of them conspired to and did kill James Williamson. There is no reason to assume they did not continue their conspiracy to avoid conviction. I do not believe the majority is saying, however, that the letters could not be used to impeach Larry Hentz.
As to Harden's confession, it is admissible as a declaration against interest under Rule 804(b)(3) of our present Rules of Evidence. I also agree with Wigmore, Chadbourn Revision, Vol V., § 1477, that a declaration against a monetary interest being admissible, it is incongruous to hold that a declaration that could put the declarant in the gas chamber should not also be competent. Our prior holdings to the contrary are arbitrary and without foundation in reason. See also: Parker v. State, 514 So.2d 767 (Miss. 1987).
NOTES
[1] This is now the sixth appeal we have considered involving the killing of James Williamson and the fallout following Owen Lee Harden's acquittal. See Harden v. State, 460 So.2d 1194 (Miss. 1984) (double jeopardy claim on subsequent arson prosecution); Hentz v. State, 489 So.2d 1386 (Miss. 1986) (reversal of conviction for receiving stolen property); Hentz v. State, 496 So.2d 668 (Miss. 1986) (Hentz guilty of contempt for refusal to answer questions at Gullett perjury trial); Hentz v. State, 503 So.2d 262 (Miss. 1987) (claim of violation of plea bargain); and Williamson v. State, 512 So.2d 868 (Miss. 1987) (reversing conviction of capital murder of James Williamson).
[2] The content of these letters is addressed in the applicable assignment of error, infra.
[3] This case was tried in June of 1984, well prior to the advent of the Mississippi Rules of Evidence, which became effective January 1, 1986. The issues tendered are decided under pre-Rules law, although references will be made to the Rules of Evidence where appropriate.