797 So.2d 258 (2001)
Larry HAMMETT, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-CA-00631-COA.
Court of Appeals of Mississippi.
January 23, 2001.
*259 Leslie Jones Martin, Natchez, for Appellant.
Office of the Attorney General by Dewitt T. Allred III, for Appellee.
EN BANC.
SOUTHWICK, P.J., for the Court:
¶ 1. The motion for rehearing is denied. This opinion is substituted for the initial opinion of the Court. This appeal follows the conviction of Larry Hammett on one count of perjury for which he received a ten year sentence as a habitual offender without the possibility of probation or parole. On appeal Hammett argues that the allegedly false statement that he made under oath was not material to the proceedings in which it was made, and that the State did not meet the necessary standard of proof of its falsity. We find that the statement was material, but agree with Hammett that the State failed to satisfy its burden of proof. We therefore reverse.

FACTS
¶ 2. In June 1995 Larry Hammett was on trial for domestic violence. He was scheduled to testify in his own behalf immediately after a lunch recess. When the court reconvened after the recess, Hammett was sworn. The trial judge questioned Hammett about his desire to testify and advised him of his constitutional rights in the proceeding. When the judge reached the point of determining whether *260 Hammett had the capacity to understand his rights, the following occurred:
THE COURT: Are you presently or have you at any time on this day been under the influence of any foreign substance, any alcohol or any drugs today?
HAMMETT: Sir? You say have I been on alcohol or drugs today?
THE COURT: Yeah, have youare you under the influence at this time or have you been under the influence during the morning session of this court of any alcohol or drugs?
HAMMETT: I had a couple of drinks.
THE COURT: When did you have a couple of drinks?
HAMMETT: Just a few minutes ago.
THE COURT: Are you under the influence at the present time?
HAMMETT: Under alcohol or drugs at this time?
THE COURT: Under alcohol. You said you had alcohol, right?
HAMMETT: Yes, sir.
THE COURT: Are you under the influence of alcohol at the present time?
HAMMETT: I haveI have drunk some alcohol at the present time.
THE COURT: Do you feel the effects of having drank some alcohol?
HAMMETT: I'm feeling kind of, you know, ...
DEFENSE COUNSEL: How much alcohol and what type?
THE COURT: How much alcohol did you have?
HAMMETT: About a pint of gin.
THE COURT: You had a pint of gin at lunchtime today? * * *
HAMMETT: Yes, sir.
* * *
DEFENSE COUNSEL: Now, we just came back from the lunch break here today and, as I understand it, you have informed the court that you had a pint of some type of intoxicating beverage to drink during your lunch period?
HAMMETT: Yeah, Seagrams's Gin and a blunt.
DEFENSE COUNSEL: How much did you drink?
HAMMETT: About a pint of it. * * *
DEFENSE COUNSEL: Who was with you when you drank that?
HAMMETT: Me andme and a couple of more dudes. We had a
¶ 3. Hammett would not name the other "dudes." The court ordered an intoxilyzer test to be administered, and then the proceedings resumed in the judge's chambers. The judge stated that the test did not reveal any measurable alcohol in his breath.
THE COURT: Mr. Hammett, do you persist in telling the court at this time that you did, during the lunch hour, consume or smoke some type of drug?
HAMMETT: A blunt. * * *
THE COURT: What is a blunt, Mr. Hammett?
HAMMETT: It's some marijuana rolled up in a cigar.
THE COURT: And you consumed that during the lunch hour?
HAMMETT: Yeah, during the lunch hour.
¶ 4. The Court then ordered Hammett taken to the Natchez Regional Medical Center for a blood sample to determine if he had ingested the marijuana and ordered that the sample also be tested for alcohol. The additional test did not reveal any alcohol. No drug test was administered that day because the proper personnel were not at the medical center. A statement was made that the drug test would be performed the next day, but whether it was ever conducted is not shown in the record. *261 Late in the same afternoon as these earlier proceedings, the judge continued with Hammett's domestic violence trial. The jury acquitted him.
¶ 5. Convinced that Hammett had attempted to delay the trial by his post-lunch claims, the judge ordered contempt of court charges to be filed against Hammett. The judge requested that the district attorney be made aware of these events in order that consideration could be given to indicting Hammett for perjury.
¶ 6. Hammett was indicted for falsely swearing that he had consumed "one pint of an intoxicating beverage or other intoxicants and was then under the influence of said intoxicants...." His perjury trial commenced in March 1997. The State offered the testimony of Debbie Blackwell, the assistant city prosecutor who represented the City of Natchez in the misdemeanor domestic violence prosecution She testified that during the judge's examination of Hammett concerning his right to testify, Hammett indicated that he was under the influence of alcohol and that he had had a pint of gin to drink during the noon hour.
¶ 7. More important than this witness's recollections was the record of precisely what Hammett had said during the earlier trial. A transcript was introduced; we have already quoted its important sections. Deputy Sheriff Richardson testified that he administered an intoxilyzer test, that the result was "Point zero zero zero percent alcohol," and that he saw no signs indicating that Hammett was intoxicated. The printout of this intoxilyzer test result was entered into evidence. Finally, the State presented the testimony of a laboratory technician at the hospital, who testified that she drew a blood sample from Hammett, analyzed it, and determined that there was either no alcohol in Hammett's system or so little as to be undetectable. She did not know how much Hammett would have needed to drink before it would be discernible in the blood.

ANALYSIS

I. The Materiality of the Statement
¶ 8. "Perjury" has this statutory definition:
Every person who shall wilfully and corruptly swear, testify, or affirm falsely to any material matter under any oath, affirmation, or declaration legally administered in any matter, cause, or proceeding pending in any court of law or equity, or before any officer thereof, or in any case where an oath or affirmation is required by law or is necessary for the prosecution or defense of any private right or for the ends of public justice, or in any matter or proceeding before any tribunal or officer created by the Constitution or by law, or where any oath may be lawfully required by any judicial, executive, or administrative officer, shall be guilty of perjury, and shall not thereafter be received as a witness to be sworn in any matter or cause whatever, until the judgment against him be reversed.
Miss.Code Ann § 97-9-59 (Rev.1994).
¶ 9. In order to prove perjury, the false testimony must have been made with reference to some matter material to the determination of the issue involved. It is not required, though, that the false testimony be material to the main issue.
The test is whether the statement made could have influenced the tribunal on the issue before it. It is sufficient if it is material to any proper matter of inquiry, and is calculated and intended to prop or bolster the testimony of a witness on some material point, or to support or attack the credibility of such a witness. It may be laid down as a general *262 rule that any testimony which is relevant in the trial of a case, whether to the main issue or some collateral issue, is so far material as to render a witness who knowingly and wilfully falsifies in giving it guilty of perjury.
Roberts v. State, 224 Miss. 754, 759-60, 80 So.2d 841, 843 (1955), quoting 21 R.C.L. 259, par. 7.
¶ 10. The question of materiality in a perjury case is one for the trial judge to answer, not the jury. Gullett v. State, 523 So.2d 296, 300 (Miss.1988). The factual issues that were to be determined in the prior action must be understood, with the trial judge in the perjury prosecution then considering the alleged false testimony in light of those issues. Id. at 299.
¶ 11. The Fifth Circuit further clarified this area of law when it stated the following:
The test of materiality is whether the false testimony was capable of influencing the tribunal on the issue, or whether the false testimony would have the natural effect or tendency to influence, impede, or dissuade the Grand Jury from pursuing its investigation. The false statements need not actually impede the investigation.
United States v. Gremillion, 464 F.2d 901, 905 (5th Cir.1972) (internal citations omitted).
¶ 12. Hammett's statements relating to his having consumed gin during the lunch recess were material to the proceeding to the extent that they were part of the story that he was under the influence of something that would impair his ability to testify. We note now and will return to the fact that he also swore that he had used marijuana during the recess. These combined assertions, whether true or not, had the potential to delay the jury's investigation of whether he was guilty of the domestic violence charges brought against him. Therefore, the statements that Hammett was under the influence of some substance were material.
Because of our resolution of the next issue, we need not address the ambiguous nature of some of the statements, especially his failure to answer directly whether he felt under the influence.

II. The standard of proof for perjury
¶ 13. The State carries the burden of proving an accused's guilt of any crime. How the crime of perjury must be proved is something that we addressed in our original opinion on this appeal. We quoted the Mississippi Supreme Court's holding that "[i]n order to convict for perjury, the prosecution is required to prove the falsity of the accused's statement by a minimum of two witnesses, or by one witness and corroborating circumstances." McFee v. State, 510 So.2d 790, 792 (Miss.1987). We found that this standard was not met.
¶ 14. In its motion for rehearing, the State points out that the "two witness" rule was not raised either at trial or on appeal. After the State had presented its case in chief, Hammett made a motion for a directed verdict based on insufficiency of the evidence. No reference to the "two witness" rule was made in that motion. After the motion was denied, Hammett presented several witnesses in his defense. That waived the motion. Wetz v. State, 503 So.2d 803, 807 n. 3 (Miss.1987). No subsequent motion was presented that challenged the sufficiency of the evidence generally or the failure to meet the standard of the two-witness rule in particular. The first possible reference to this special requirement to prove perjury was in Hammett's appellate brief when he cited McFee that explains the two-witness rule. Even there Hammett did not discuss the rule itself.
*263 ¶ 15. We accept the State's argument that Hammett's counsel did not specifically raise this defect at trial or in his appellate papers. Generally, we may not review an issue neither preserved below nor argued on appeal. However, an exception exists: "the court may, at its option, notice a plain error not identified or distinctly specified." M.R.A.P. 28(a)(3). Under that rule a reviewing court may address issues as plain error "when the trial court has impacted upon a fundamental right of the defendant." Sanders v. State, 678 So.2d 663, 670 (Miss.1996). The possible failure of the State to prove the crime for which an accused was convicted is so fundamental that we conclude it would be a substantial miscarriage of justice to permit a conviction to stand because of a waiver. Mickel v. State, 602 So.2d 1160, 1162 (Miss.1992). Therefore, we note the issue as plain error.
¶ 16. The State briefed its view of the applicability of the two witness rule in its motion for rehearing, and thus we have the benefit of its analysis. It argues that the rule is inapplicable. In the case cited for this conclusion, the Supreme Court stated that two witnesses were not needed when an accused clearly committed perjury by making two inconsistent sworn statements, but the State cannot prove which statement is the false one. Hogan v. State, 516 So.2d 474, 477 (Miss.1987). The holding was limited to prosecutions "when the State is unable to offer additional proof as to the precise date the accused lied, and evidence aliunde as to the truth of the matter about which the accused testified." Id. at 481. The Hogan exception has no applicability here.
¶ 17. Therefore it is required that this conviction satisfy the "two witness" rule. Perjury must be proved by two witnesses or one witness and corroborating evidence. In one perjury trial, the sole witness testified that the accused, who was her son, admitted to her that he could not tell the truth on the stand because the truth would convict his friend. McFee, 510 So.2d at 793. He told her what allegedly had occurred during the crime, then testified in a different fashion at his friend's trial. "Clearly, the testimony of McFee's mother satisfies the requirement that one witness testify to the falsity" of the statement. Id. at 793. McFee had sworn in pre-trial statements to police that his friend was involved in the crime, but at the friend's criminal trial testified that he was innocent. The Court held "that when proof of one accused of perjury who made sworn statements which conflict with the sworn statement upon which the perjury is founded, is supported by corroboration of a single witness, such is sufficient to warrant a conviction." Id. The two prior and inconsistent sworn statements by McFee himself along with the testimony of McFee's mother satisfied the witness plus corroboration rule.
¶ 18. Turning now to Hammett's trial, the material issue was whether he had falsely sworn that he was under the influence of alcohol or drugs after the lunch recess. The State argues that the two tests that were later administered to Hammett that failed to discover alcohol in his system satisfied the one witness and corroboration principle. Instead, we find that the tests do not satisfy either requirement. Although the test could not discover any alcohol in his system, the lab technician called to discuss the test results admitted that she did not have the expertise to address whether Hammett might have consumed alcohol during the recess, but the quantity was small enough not to have registered.
¶ 19. Missing from the State's case is any witness who was with Hammett throughout the lunch recess. Alternatively, *264 as in McFee a witness might state that Hammett admitted that what he said in the proceeding had been false. The witness that the State discusses on rehearing was Bill Calvin, who testified that he did not see Hammett drink during lunch. However, Calvin also testified that he was not with Hammett throughout the whole lunch recess, and also testified that he and Hammett had drinks before trial that morning. The State argues that we have imposed an obligation that it perform an impossible task, namely, that it find all the witnesses who were with Hammett during lunch. That is not our holding. We are saying that if the conviction that the State wishes to sustain requires proof that someone had nothing at all to drink during a certain time period, that it is not enough to present a witness who can testify only as to part of that period.
¶ 20. Moreover, we accept the State's rehearing argument that the material issue was not whether Hammett had consumed some alcohol, but whether he had reason to state that he might be impaired. The indictment referred to the use of "an intoxicating beverage or other intoxicants" as being the central false statement. "Intoxicant" often refers to alcohol. See Miss. Code Ann. § 41-30-3(j) (Rev.1993). More generally it has been defined as a chemical substance that stupefies or excites. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 945 (3d Ed. 1992). If this indictment was intended to include Hammett's statements about drug use, it did not clearly do so. Certainly the evidence presented at the perjury trial did not address drug use.
¶ 21. The State would have these proceedings ignore the drug claim and focus solely on the proof that he did not have enough alcohol in his system to have claimed honestly that he was under its influence. However, the immaterial potential falsehood is not whether Hammett had gin to drink during lunch. Even if Hammett falsely stated the combination of substances that might be making him impaired, or at times claimed only alcohol as the culprit, what was material is that either drugs or alcohol, both of which he named during the initial questioning, were affecting his ability to testify. Identifying too many substances did not have the potential of impeding Hammett's trial; falsely claiming any impairment would have had that potential.
¶ 22. Once the evidence was introduced that Hammett's statements went beyond just alcohol use as the source of his impairment, and even accepting the indictment as being sufficiently broad to cover all that was necessary to show that a material false statement was made, then the State needed to prove Hammett would not have reason to believe that he was feeling the effect of this other substance in his system. There is no evidence of whether a laboratory test was ever conducted regarding marijuana. The entire question of drug use was ignored at the perjury trial.
¶ 23. Hammett alleged that he had been drinking gin and smoking marijuana. Proof that no discernible alcohol was in his system was indirect and incomplete proof that he was lying about the drinking. No proof that he had not ingested marijuana was offered. The State failed to prove that Hammett falsely swore that his lunchtime activities had a debilitating effect on him and made it questionable whether he had the capacity to testify.
¶ 24. THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT IS REVERSED AND RENDERED AND SENTENCE IS VACATED. COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
*265 McMILLIN C.J., KING, P.J., BRIDGES, IRVING, LEE, MYERS, PAYNE, and THOMAS, JJ., concur.
CHANDLER, J., not participating.