956 So.2d 301 (2006)
Billy Ray FORD, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00478-COA.
Court of Appeals of Mississippi.
November 7, 2006.
Rehearing Denied April 10, 2007.
*302 Jonathan Michael Farris, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before MYERS, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. Billy Ray Ford, Jr. was convicted of perjury by a Forrest County jury. He was sentenced as a habitual offender to ten years in the custody of the Mississippi Department of Corrections without the benefit of parole. Ford perfected this *303 appeal following denial of his post-trial motions for new trial and judgment notwithstanding the verdict ("JNOV"). On appeal, Ford contends that (1) the prosecution failed to satisfy the "minimum of two witnesses or one witness and corroborating circumstances" requirement, and (2) Ford's perjury conviction was improper because "he did not in a direct and specific manner make the false statement he is accused of making. . . ." Finding no reversible error, we affirm the conviction and sentence.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On May 20, 2002, Ford pled guilty pursuant to a plea agreement and was convicted in the Circuit Court of Forrest County, Mississippi of receiving stolen property. Ford was initially charged with residential burglary, but this charge was reduced as part of the plea agreement. The agreement provided for a five year sentence in the custody of the Mississippi Department of Corrections with three years suspended on unsupervised probation and two years to serve. Ford was given credit for time already served in custody awaiting trial, satisfying the two year service portion of the sentence. As a result, the three years of unsupervised probation was all that remained to be served by Ford. In exchange for these concessions by the State, Ford was required to leave the jurisdiction of Forrest, Perry, and Lamar Counties and remain out of these counties for the duration of his three year probation period. This condition was made a part of the "Entry of Guilty Plea and Judgment of Court" entered on May 20, 2002.
¶ 3. On the evening of October 13, 2003, officers with the Hattiesburg Police Department, investigating an incident reported earlier that evening, were led to an apartment complex where Billy Ray Ford was located. This apartment complex was located in Hattiesburg, Forrest County, Mississippi. Believing that Ford was involved in the incident that was reported earlier that evening, the Hattiesburg police officers took Ford into custody.
¶ 4. On November 10, 2003, an affidavit was filed in the Forrest County Circuit Court for violation of probation, alleging that Ford "violated the condition of his suspended sentence by being present in Forrest County, Mississippi on 10-13-2003 when he was prohibited from being in Forrest County by the terms of his probation." A revocation hearing was held on March 3, 2004, in the Forrest County Circuit Court to determine whether Ford violated the terms of his plea agreement and whether, as a result, his probation should be revoked. The State of Mississippi was represented by the district attorney for Forrest County while the defendant Ford appeared pro se.[1]
¶ 5. During the course of the hearing, Ford repeatedly referenced cases that he had pending in federal court and stated that he "was subpoenaed back here for a hearing on the matter for which I filed the paperwork in the federal court building."[2] Believing that Ford was affirmatively representing that he was in Hattiesburg on October 13, 2003, by court order, District Attorney Jon Mark Weathers requested that Ford be placed under oath. Testifying *304 now under oath, Ford was questioned at some length regarding his presence in Hattiesburg on October 13, 2003. More specifically, Judge Helfrich asked Ford questions to determine why Ford was in Hattiesburg on the day in question, as Ford was not disputing that he was physically present on October 13.[3] It is testimony elicited during this line of questioning that was the basis for Ford's perjury charge and conviction. The following is an excerpt from the revocation hearing transcript containing the statements for which Ford was charged and convicted of perjury:
THE COURT: So you're alleging that on October 13 of 2003 you were summonsed to be back before the federal court?
DEFENDANT FORD: No. You said that.
THE COURT: No, I'm saying is that what you're alleging?
DEFENDANT FORD: What are you alleging that I did on October 13?
THE COURT: It's alleged that you were in this jurisdiction in violation 
DEFENDANT FORD: And I already told you 
THE COURT: Mr. Ford, do not interrupt me again. It is alleged that you were in this jurisdiction on that date in violation of this Court's order. That's the allegation.
DEFENDANT FORD: And the allegation I'm asking for you to is I was summoned back here to this town.
THE COURT: By the federal court 
DEFENDANT FORD: And this case was not dismissed until after October 13. It was not dismissed until after this alleged victim keep trying to throw up in my face it was still in the federal court building. And as pro se, I'm claiming my right to as an attorney I have a right to go in and out of that building just like they got rights in here as an attorney.
THE COURT: But you're stating 
DEFENDANT FORD: I'm claiming today 
THE COURT: You're claiming you were subpoenaed to be here or summonsed to be here by the Court for a hearing in that matter on the day?

DEFENDANT FORD: That's what I said. I swore an oath to that.[4]
¶ 6. After the above exchange, the hearing was recessed so that members of Weathers' staff could search the federal court files to determine whether Ford was telling the truth regarding the federal cases. Pursuant to this search, it was determined that Ford did in fact have two active federal cases still pending at that time but there were no documents which indicated that Ford was subpoenaed or was otherwise required to be in Hattiesburg on October 13. The following represents the colloquy that transpired after the hearing reconvened:
THE COURT: Let the record reflect we've reconvened. Do you have the file?
MR. WEATHERS: Yes, sir. If it please the Court, I'm going to hand you a United States District Court civil file, Billy Ray Ford versus Forrest County, et al., . . . which was a case pending in the year 2003. In addition to that, there was another case that was pending. . . . The file should reflect there was a writ *305 of habeas corpus ad testificadum issued by the clerk of the court on the 18th day of September 2002 requiring Mr. Ford to be present at the courthouse in Hattiesburg on May 29, 2003, at 9:00 a.m. That, as the file will reflect, applied to both cases and those are the only two cases pending at the time, so the file should reflect that he had no business[] being here and was not subpoenaed to the United States District Court on October 13, 2002, as he previously stated under oath here today.
DEFENDANT FORD: I want to also state that that don't have nothing to do with this case that I told you that I was subpoenaed back here for. The case I'm talking about is Billy Ray Ford versus Billy Magee, etcetera all. He never called this case out. The case number is 2:02cv138  the date I was subpoenaed back here was June 29. It didn't have nothing to do with May 29.
THE COURT: That's correct. The date was for the cause numbers 2:02cv555PG, Billy Ray Ford versus Forrest County, et al. and 2:02cv138PG, Billy Ray Ford versus Billy Magee, et al, the date of the hearing was May 29, 2003. Do you disagree with that[?]
DEFENDANT FORD: It was May or June?
THE COURT: May 29, 2003, is what the court file reflects. Do you have anything further, Mr. Ford?
DEFENDANT FORD: Well, I'm not going to be able to call no witnesses?
THE COURT: What witnesses, Mr. Ford? This court file speaks for itself.
DEFENDANT FORD: What did you say?
THE COURT: I said this file speaks for itself.
DEFENDANT FORD: So when was I sentenced? What day was I sentenced not to come back to town?
THE COURT: May 22, 2002.
DEFENDANT FORD: May 22, 2002. And I was subpoenaed back here when?
THE COURT: May 29, 2003.
DEFENDANT FORD: 2003. I was subpoenaed back here to this town after the court order. After the court order. It wasn't before. It was after. So that puts me in direct violation of the court order not to come back to town.
THE COURT: Okay. But that's not what you're before the Court on. You're before the Court on being back in this town on October 13, 2003.
DEFENDANT FORD: I haven't been convicted of any crime, and I got an affidavit right here. This court was not dismissed until February 9, 2004.
THE COURT: That has nothing to do 
DEFENDANT FORD: I am pro se. I have liberty in that federal court building. I have a right.
THE COURT: And if you were simply in this jurisdiction for a scheduled court hearing or by order of that Court, you would be correct. I find you are in violation of the terms and conditions of the order of May 22, 2002, and hereby revoke the same. That will be the order of the Court and remand you to the custody of the sheriff for implementation of the sentence. (COURT ADJOURNED)
¶ 7. Believing that Ford intentionally testified falsely at the revocation hearing in order to avoid having his probation revoked, the district attorney presented the case for perjury to the grand jury which indicted Ford as follows:
Billy Ray Ford, Jr. in Forrest County, Mississippi, on or about March 03, 2004, did unlawfully, willfully, feloniously, and corruptly testify falsely to a material matter under oath . . . by testifying that *306 he, Billy Ray Ford, Jr., returned to Forrest County, Mississippi in apparent violation of the Court's Order of May 22, 2002, only because Billy Ray Ford, Jr. was under Federal Subpoena to be present in Court on a certain date and time which included October 13, 2003; for the purpose of avoiding punishment for violating the terms of the Court's Order of May 22, 2002, by the Circuit Court Judge of the City of Hattiesburg, Mississippi, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.[5]
¶ 8. Ford was brought on for trial in the Circuit Court of Forrest County on August 9, 2004, to face charges of perjury. At this trial, Weathers, who was the district attorney at Ford's revocation hearing, was asked whether Ford "specifically stood up before this Court under oath and represented to the Court that he was subpoenaed to be in federal court on October 13, 2003?" In response, Weathers stated: "[t]hat was the gist of his testimony from the beginning to end, when he began to tell the Court why he was here." Weathers further testified that the entire hearing was about October 13 and that the reference to "the day" in the following exchange was understood by everyoneincluding Fordto be referring to October 13:
THE COURT: You're claiming you were subpoenaed to be here or summonsed to be here by the Court for a hearing in that matter on the day?

DEFENDANT FORD: That's what I said. I swore an oath to that.
(Emphasis added). The prosecution then introduced evidence that showed that Ford in fact had not been required to be in Hattiesburg on October 13, 2003, by subpoena, summons, or other court order.
¶ 9. At the close of the State's case in chief, counsel for Ford moved for a directed verdict which was denied by the trial judge. The defense then rested, choosing not to call any witnesses. The jury returned a guilty verdict, and Ford was sentenced as a habitual offender to ten years in the custody of the Mississippi Department of Corrections. Ford then moved for JNOV, which was denied by the trial court. Ford subsequently perfected this appeal urging that the jury's verdict was against the overwhelming weight and sufficiency of the evidence. For reasons that we will now discuss, we find no merit in Ford's assertions of error and therefore affirm the jury's verdict.

ANALYSIS
¶ 10. On appeal, Ford challenges both the weight and sufficiency of the evidence presented at trial to convict him of perjury. The State maintains that sufficient evidence exists supporting the jury's verdict and that the verdict should not be overturned. We agree.
¶ 11. Our authority to disturb a jury's verdict on appeal is very limited. Melton v. State, 723 So.2d 1156, 1161(¶ 29) (Miss.1998) (citing Benson v. State, 551 So.2d 188, 192-93 (Miss.1989)). In determining whether the verdict is against the overwhelming weight of the evidence, we must "view[ ] all of the evidence in the light consistent with the verdict and . . . give the State all favorable inferences *307 which may be drawn from the evidence." Id. (quoting Strong v. State, 600 So.2d 199, 204 (Miss.1992)). "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005) (citing Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). The proper remedy under this standard is to grant a new trial. Id.
¶ 12. In analyzing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 843(¶ 16) (citations omitted). Only where "the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty" will we reverse and render. Smallwood v. State, 584 So.2d 733, 740 (Miss.1991) (quoting Winston v. State, 479 So.2d 1093, 1095-96 (Miss.1985)).
¶ 13. Mississippi's perjury statute provides, in pertinent part, that "[e]very person who shall wilfully and corruptly swear, testify, or affirm falsely to any material matter under any oath . . . shall be guilty of perjury. . . ." Miss.Code Ann. § 97-9-59 (Rev.2000). The facts in the case before us are not disputed. Ford does not assert that the revocation hearing transcript incorrectly reflects what was said during the proceedings nor does he contend on appeal that he was required by federal court order to be in Hattiesburg on October 13, 2003. Instead, Ford argues on appeal that (1) the State failed to satisfy the "minimum of two witnesses or one witness and corroborating circumstances" requirement, and (2) Ford's perjury conviction was improper because "he did not in a direct and specific manner make the false statement he is accused of making. . . ." Consequently, according to Ford, the State failed to produce sufficient proof that he "wilfully and corruptly" testified falsely as alleged in Ford's indictment for perjury.
¶ 14. Ford correctly points out that in order to convict on a charge of perjury, the prosecution must prove the falsity of the accused's statement by a minimum of two witnesses, or by one witness and corroborating circumstances. Hammett v. State, 797 So.2d 258, 262(¶ 13) (Miss.Ct.App.2001) (citing McFee v. State, 510 So.2d 790, 792 (Miss.1987)). However, it is clear from the record that the State met this burden, as it provided the testimony of District Attorney Jon Mark Weathers, United States Federal District Court Clerk Michael Rigdon, and introduced into evidence the federal documents that proved that Ford was not under court order to be in Hattiesburg on October, 13, 2003. Ford incorrectly argues that this "minimum of two witnesses or one witness and corroborating circumstances" standard is also required to prove that the accused actually said what he is accused of having said under oath. We disagree with this characterization of the "two witness" requirement. In McFee, the Mississippi Supreme Court recognized "that the common law rule that one witness and other corroborating circumstances must be proved to sustain a perjury conviction refers only to proof of the falsity of the accused's statement. The necessity of corroboration does not extend to proof of the other elements of the crime." McFee, 510 So.2d at 793. The "other element of the crime" at issue in the case sub judice is Ford's interpretation of Judge Helfrich's question and his state of mind with respect to his response, which brings us to Ford's second argument.
*308 ¶ 15. Ford's second argument on appeal is essentially that the question posed by Judge Helfrich at the revocation hearing regarding whether Ford was subpoenaed to be in Hattiesburg "on the day" did not specify a particular day and hence it cannot be proven that Ford's response of "[t]hat's what I said. I swore an oath to that" was in reference to October 13. While we acknowledge that this lack of specificity in Judge Helfrich's question creates some ambiguity, we find that it is for the jury to resolve this ambiguity.
¶ 16. Ford cites several federal cases to support his contention that his response to Judge Helfrich's question could not be the basis for a perjury charge. According to the United States Supreme Court, for testimony to be considered perjury, the witness must have testified "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (citations omitted).[6] Unresponsive answers that are literally true cannot, according to the Court, sustain a conviction for perjury, even if the witness knowingly and intentionally gives misleading answers. Bronston v. United States, 409 U.S. 352, 357-59, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). In this regard, "[a] jury should not be permitted to engage in conjecture" as to whether an unresponsive but literally true answer "was intended to mislead or divert the examiner[.]" Id. at 359, 93 S.Ct. 595. A witness's state of mind is relevant only as to whether or not he believes his testimony to be true. Id. It is the questioner's responsibility to "flush out the whole truth" when faced with unresponsive, misleading, and evasive testimony. Id. We find the reasoning employed by the United States Supreme Court in these cases persuasive yet inapplicable to the case sub judice.
¶ 17. In Bronston, the defendant was asked whether he presently had any accounts in Swiss banks, to which he truthfully replied: "No, sir." Id. at 354, 93 S.Ct. 595. He was then asked whether he had ever had any Swiss bank accounts, to which he replied: "The company [that he worked for] had an account there for about six months, in Zurich." The Court acknowledged that the question called for the defendant's personal account history yet his answer gave the company's account history, and that the answer was therefore unresponsive. Given the fact that the defendant did have a Swiss bank account at some point in the past, the answer was not only unresponsive but misleading as well, as the implication of his answer was that he had never had a personal Swiss bank account when he in fact had. Despite this acknowledgment, the Court concluded that "any special problems arising from the literally true but unresponsive answer are to be remedied through the `questioner's acuity' and not by a federal perjury prosecution." Id. at 362, 93 S.Ct. 595.
¶ 18. We are not presented with the same circumstances in the case before us as those presented in Bronston. In the case sub judice, Judge Helfrich posed the following question to Ford at the revocation hearing: "You're claiming you were subpoenaed to be here or summonsed to be here by the Court for a hearing in that matter on the day?" We conclude that if Ford understood Judge Helfrich's reference to "the day" to be referring to October 13, 2003, then Ford's response of "[t]hat's what I said. I swore an oath to that" was indeed false as it was clearly established at trial and is undisputed on appeal that Ford was not required by subpoena *309 or summons to be in Hattiesburg on October 13. Under this understanding of the question posed, Ford did not recite a literal truth that was simply unresponsive or misleading, rather he willfully and intentionally provided false testimony when he gave an affirmative response to the question posed to him. The only questions left to be resolved are (1) whether it is the province of the jury to determine the meaning attached to a question by a witness, and (2) whether there was sufficient evidence for a jury to make that determination.
¶ 19. "[P]erjury cases, like all criminal cases, are susceptible to proof by circumstantial evidence, and in fact are peculiarly likely to be proven in this manner because one of the elements of the crime is that the defendant knew his statement was false when he made it." United States v. Chapin, 515 F.2d 1274,1280-81 (D.C.Cir.1975) (citing Young v. United States, 212 F.2d 236, 241 (D.C.Cir.1954); Gebhard v. United States, 422 F.2d 281, 287-88 (9th Cir.1970); Behrle v. United States, 100 F.2d 714, 715-16 (D.C.Cir. 1938)). The government is not required in a perjury prosecution to elicit an admission by the defendant "as to what he thought the question meant at the time he answered it in order for the jury to make that determination." Id. at 1281. Pertinent to the jury's determination is the context of the question, the answer given, and other extrinsic evidence which may bear on Ford's understanding of the question at the time he answered it. See U.S. v. Culliton, 328 F.3d 1074, 1079 (9th Cir. 2003) (citing United States v. Sainz, 772 F.2d 559, 561 (9th Cir.1985) ("[W]e must look to the context of the defendant's statement to determine whether the defendant and his questioner joined issue on a matter of material fact to which the defendant knowingly uttered a false declaration."))
¶ 20. In light of these considerations, we find that it was within the province of the Forrest County jury to determine what meaning Ford attached to the question posed by Judge Helfrich at the revocation hearing. Consequently, the jury was permitted to determine that Judge Helfrich was referring to October 13, 2003, when he used the words "the day" in his question and that Ford understood this to be the case. We do not find the verdict to be against the overwhelming weight of the evidence.
¶ 21. We further find that sufficient evidence was presented at trial for the jury to make the determination that Ford understood "the day" to be referring to October 13, 2003. As district attorney Weathers testified at trial, the only issue before the court at the revocation hearing was whether Ford was in Hattiesburg on October 13, 2003, and, if so, the reason for Ford's presence in Hattiesburg on October 13. According to the trial transcript, Weathers testified that "[w]hen the Court and everybody is talking about that day or referring to a day, the only day at issue is why Billy Ray Ford was in Hattiesburg, Forrest County, Mississippi, on October 13, 2003, in violation of his May 20, 2002, court order. . . . That's it. That's the day." In addition to Weathers' testimony, a redacted version of the revocation hearing transcript was introduced into evidence, so the jury was able to determine first hand the context of the question. See United States v. Boone, 951 F.2d 1526, 1534 (9th Cir.1991) ("In evaluating . . . the question's ambiguity, the court must consider the context in which the question was asked. . . . ")
¶ 22. We conclude that the verdict of the Forrest County jury was supported by sufficient, substantial, and credible evidence, *310 and was not against the overwhelming weight of the evidence. Accordingly, we affirm Ford's conviction and sentence.
¶ 23. THE JUDGMENT OF THE FORREST COUNTY CIRCUIT COURT OF CONVICTION OF PERJURY AND SENTENCE OF TEN YEARS WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] "[P]robationers (and parolees) do not `have, per se, a right to counsel at revocation hearings.'" Riely v. State, 562 So.2d 1206, 1209 (Miss.1990) (citations omitted).
[2] The United States District Court for the Southern District of Mississippi has a federal court building in Hattiesburg, Forrest County, Mississippi.
[3] Weathers submitted at trial that if Ford had been required to be in Hattiesburg pursuant to federal court order on October 13, 2003, Weathers would not have pursued revocation of Ford's probation.
[4] The statements which were the basis for the perjury charge and conviction are in italics. The preceding questions and answers are included to provide context.
[5] The colloquy at the revocation hearing and the language in the indictment refer to the "Court's Order of May 22, 2002." However, the record before us indicates that the "Entry of Guilty Plea and Judgment of Court" was entered on May 20, 2002. The May 20, 2002 judgment contains the condition requiring Ford to stay out of Forrest, Perry, and Lamar counties.
[6] The federal perjury statute at issue in Dunnigan "parallels typical state-law definitions of perjury." Dunnigan, 507 U.S. at 94, 113 S.Ct. 1111.